# Mobile Life Insurance Co. v. Randall.

*Special Action on the Case for Damages.*

1. *Complaint; what counts may be joined.*—Counts in trover and in case may be joined in the same complaint, but counts in trover can not be joined with counts in assumpsit.

2. *Amendment of complaint.*—The introduction of a new cause of action, by an amended count, is a departure from the original complaint, and is not allowable.

3. *When case lies, and when assumpsit.*—For the breach of an ordinary contract, which involves no element of tort, an action of assumpsit is the proper remedy, and an action on the case will not lie; but, when a duty is imposed by the contract, or grows out of it by legal implication, and injury results from the violation or disregard of that duty, an action on the case will lie to recover damages, although an action of assumpsit might also be maintained for the breach of duty.

4. *Same.*—Whenever there is carelessness, recklessness, want of reasonable skill, or the violation or disregard of a duty which the law implies from the conditions or attendant circumstances, and individual injury results therefrom, the party injured may maintain an action on the case; and if the transaction had its origin in a contract between the parties, the contract is mere matter of inducement.

5. *Count held not to be in case.*—A count by which plaintiff claims damages, for that whereas, on the — day of ——, plaintiff and defendant entered into an agreement, whereby plaintiff became agent of defendant, a corporation engaged in the business of life-insurance, and, under said agreement, was to solicit and procure the taking out of policies in defendant's said company, and was to receive, as compensation for his said services, certain commissions upon the premiums on said policies, and commissions upon renewal premiums; and then avers, "that plaintiff engaged actively in said business, giving his time, energies and attention to the business, and expending large sums of money in building up and

[Mobile Life Insurance Co. v. Randall.]

extending defendant's business; that said contract was renewed from time to time, until, to-wit, on the 3d day of April, 1876, said contract was so modified as to give or entitle plaintiff to a life interest of ten per-cent. in all renewal premiums upon all ordinary life policies then in force, procured by him, or issued through his agency, or which should be thereafter procured through his agency, and a life interest of twenty per-cent. on all yearly renewal term policies; that a large majority of the policies issued by defendant during plaintiff's connection with said company, to-wit, &c., "were issued upon applications sent in through plaintiff's agency, and were in force; and that defendant, disregarding the rights of plaintiff under said agreement, and in violation of said agreement, did, to-wit, on the 1st day of September, 1878, wrongfully discharge plaintiff from its service, and deny him all right to said renewal premiums, or any interest therein, and still refuses to recognize his interest therein," —is in assumpsit, and not in case.

APPEAL from the Circuit Court of Etowah.

Tried before the Hon. LEROY F. BOX.

This action was brought by R. O. Randall, against the appellant, a domestic corporation, and was commenced on the 5th April, 1879. The original complaint contained two counts, each in trover; and a third count was added by amendment, which was in these words: "Plaintiff claims of defendant, also, ten thousand dollars as damages, for that whereas, to-wit, on the—day of——, plaintiff and defendant entered into an agreement, whereby plaintiff became the agent of said defendant, a corporation engaged in the business of life-insurance in the State of Alabama, and, under said agreement, plaintiff was to solicit and procure the taking out of policies in defendant's company, and was to receive, as his compensation for his said services, certain commissions upon the premiums on said policies; and plaintiff engaged actively in the business, giving his time, energies and attention to the business, and expending large sums of money in building up and extending the defendant's said business; that the said contract was renewed from time to time, until, to-wit, on the 3d day of April, 1876, the said contract or agreement was so modified as to give or entitle plaintiff to a life interest of ten per-cent. in all renewal premiums upon all ordinary life policies then in force, procured by plaintiff, or issued through his agency, or which should be thereafter procured through his agency, and a life interest of twenty per-cent. on all yearly renewal term policies; that a large majority of the policies issued by defendant during plaintiff's connection with defendant, to-wit, 184 ordinary life policies, and 26 yearly renewable term policies, as described in the first count, were issued upon applications sent in through plaintiff's agency, and were in force. And plaintiff avers that defendant, disregarding the rights of plaintiff under said agreement, and in violation of said agreement, did, to-wit, on the 1st day of September, 1878, wrongfully discharge plaintiff from its

service, and deny him all right to said renewal premiums, or any interest therein, and still refuses to recognize plaintiff's interest therein; to plaintiff's damage, ten thousand dollars." The defendant demurred to the entire complaint, after this third count was filed, on the ground of a misjoinder of counts; and also to this count separately, because it was in assumpsit, and because it was a departure from the original complaint. The court overruled the demurrer to the entire complaint, holding that the third count was in case, and sustained a demurrer to the second count; and on the trial, as the bill of exceptions states, held the plaintiff's evidence inadmissible under the first count. The general issue was pleaded to the third count, after the overruling of the demurrer, and the cause was tried on issue joined on that plea.

On the trial, as the bill of exceptions shows, the plaintiff read in evidence two contracts in writing, entered into between him and the defendant, and signed by both of them, which were in these words:

1. "This agreement, made this 19th day of February, 1874, to take effect and be in full force from and after said day, and to expire on the 19th day of February, 1875, between R. O. Randall, of Gadsden, Alabama, of the first part, and the Mobile Life Insurance Company, of Mobile, Alabama, of the second part, *witnesseth*, that the said party of the first part, for the consideration hereinafter mentioned, agrees to act as agent of the said party of the second part, in soliciting applications and collecting premiums for insurance, and such other duties as may be intrusted to or required of him in the prosecution of the business of said agency, under the conditions hereinafter mentioned. In consideration whereof, the said party of the second part hereby agrees to pay the said party of the first part, as full compensation for such service and work performed by him, or of sub-agents employed by him, with the additional expense of postage, expressage, exchange, medical examinations, legal taxes and legal advertising, a commission of thirty-five per-cent. on all policies, except ten payment-endowment and five payment policies, on which the commission shall be twenty-five per-cent. on the first premiums of policies issued and paid for on applications taken by him, except premiums on full policies (*i. e.*, for which the whole premium for life is paid at once), which shall be seven and a half per-cent., and ten per-cent. of the renewal premiums, as follows: on all policies, except ten payment-endowment and five payment policies, on which the renewal commission shall be seven and one half per-cent., and ten per-cent. of the renewals of policies now in force in said agency and collected by him, and for which collections he shall deliver receipts, furnished (signed) by the president or

secretary of the company, but will be entitled no longer to any renewal than the assured remains resident within said agency; but, for the collection of renewal premiums on a policy issued to a person not residing within the said agency when originally assured, the agent is entitled to commissions as in other like renewals. It is further understood and agreed, that the said party of the first part shall have the option of renewing this contract annually, on the same terms, for five years. It is also understood and agreed, that the said party of the second part reserves to *themselves* the right at any time to send travelling agents to said agency, to solicit applications, deliver policies, and collect premiums; and said agent agrees, in all such cases, to give such travelling agents his earnest co-operation and assistance, and to attend to all unfinished business of such travelling agents, in the delivery of policies and collection of premiums, for which service he will be remunerated in the future renewals of the policy. In cases of substituted policies, of increased insurance, on the same person, into a larger policy (the old policy being surrendered), or of increased premiums resulting from any other change of policy, when such change is procured by said agent, commissions will be allowed for the first year of the substituted policy, or increased premium, only upon the actual amount of the increase of premium received by the company. When the premium is payable either quarterly or semi-annually, commissions will be allowed only upon the sum so obtained, and in no case before the sum is collected and paid over to the company. In consideration of the above, the said party of the first part agrees to devote his whole time and attention diligently to the interests of the said party of the second part, to the said business of soliciting applications and collecting premiums within the limits of said agency, and to make a report to the home office in Mobile on the last business day of each month, with remittances to balance such report, and that the said party of the first part will not work for any other life-insurance company during this contract; and the failure to carry out this contract, in any of the above particulars, shall be good and sufficient reasons for the removal of such agent. And it is further understood and agreed, that upon the discontinuance of the service of said agent, either by resignation, removal, or any other way, all interest of said agent in this contract, in commissions, premiums, or renewals, shall cease, and shall revert to the company, unless it is otherwise specially agreed. In witness whereof," &c.

2. "It is hereby agreed, that the contract between R. O. Randall, of Gadsden, Alabama, of the first part, and the Mobile Life Insurance Company, of Mobile, Alabama, of the second part, shall, in consideration of the faithful and efficient

services of the party of the first part, be so changed as to allow the party of the first part ten (10) per-cent. commissions on single payments, or full paid policies, in lieu of seven and one half (7.5) per-cent., as stated in the contract, and also the policy fees on all the policies issued through his agency; and it is further agreed, that the said party of the first part shall be entitled to, and shall receive from the party of the second part, a commission of ten (10) per-cent. of the renewal premiums of all the policies now in force in said agency and on his books, and on all policies that may hereafter be issued through his agency, so long as the policies are kept in force, or during the remainder of the life of the party of the first part; provided that, whenever the said party of the first part shall, from any cause, cease to collect the renewal premiums on the policies as aforesaid, the party of the second part shall use due diligence in the collection of the same, and pay over to the said party of the first part, during each and every year, the ten (10) per-cent. commissions on the amount so collected, less the actual cost of collection, which shall in no case exceed five (5) per-cent. of the premiums; and it is further agreed, that the party of the first part shall receive a commission of twenty (20) per-cent. of the first and all subsequent premiums on the yearly renewable term policies (a plan of insurance not provided for in the original contract), and that the twenty (20) per-cent. commissions shall accrue to the party of the first part, during his life-time, subject to the same provisions as policies issued on other plans of insurance. Dated this 5th April, 1876."

These contracts were admitted in evidence by the court, as competent under the third count, and exceptions to their admission were reserved by the defendant. The plaintiff, testifying as a witness for himself, stated the services which he had performed as agent for the defendant, the number of policies which he had procured, the amount of annual premiums on renewals, &c., and the value of his interest therein by the terms of the second (or modified) contract; and he then continued: "I had collected the renewals on the 27th August, 1878, and ceased to collect the renewals on the 1st September. I had issued renewal notices for September, and was ready to collect the same; but renewal receipts were withheld from me by the defendant, and I could not collect the renewals without the receipts. It was the custom of the company to send out renewal receipts, signed by its secretary; and I could not collect the renewals without such receipts signed by the secretary." The witness further stated, on cross-examination, that he "joined the Knights of Honor in the spring of 1878, and organized lodges in the spring and summer, prior to 1st August;" that this society is "an association and species of life-

[Mobile Life Insurance Co. v. Randall.]

assurance—no one can join the association without taking life-insurance; and that he solicited parties who had policies in the defendant's company to join said association;" also, that he "became secretary of the People's Mutual Relief Association (a co-operative life-insurance company, on the assessment plan), at its organization, on the 1st August, 1878;" that he "ceased to solicit new business for the defendant, when he went into the Knights of Honor and the People's Mutual Relief Association, and ceased to work for the defendant, for or in general business, in June. 1878, and so notified the secretary." It further appeared from the letters between the parties, which were read in evidence, that the defendant regarded the plaintiff's engagement with these other companies, as a violation of the contract between them, and therefore refused to send him any renewal receipts; and refused to pay out his interest in the policies then in force, and insisted that he had forfeited all interest therein.

The court charged the jury, among other things, "that the plaintiff was entitled to recover whatever damages he had sustained by the defendant's wrongful interference, if the evidence showed such interference, with his renewal interest in the renewal premiums on the policies procured by him, and through his agency, and which were of force on the 1st September, 1878." The defendant excepted to this charge, and requested the court, in writing, to instruct the jury, "if they believed the evidence, they must find for the defendant;" and the defendant excepted to the refusal of this charge.

There are twenty-four assignments of error, embracing the adverse rulings of the court on the pleadings, the several rulings on evidence to which exceptions were reserved, the charges given, and the refusal of the charges asked.

AIKEN & MARTIN, for appellant.    (No brief on file.)

DENSON & DISQUE, *contra.*—(1.) The third count is in case, and shows a good cause of action. The contract is stated as mere inducement to show the respective obligations of the parties, and the *gravamen* is the breach of duty and consequent injury to the plaintiff.—*Blick v. Briggs*, 6 Ala. 687; *Hussey v. Peebles*, 53 Ala. 432; *Nabring v. Bank*, 58 Ala. 204; *Samuel v. Judin*, 6 East, 333; *Smith v. White*, 8 Dowl. 255; *Wilkinson v. Mosely*, 18 Ala. 288; s. c., 24 Ala. 411; *Meyers v. Gilbert*, 18 Ala. 467; *Emigh v. Railroad Co.*, 4 Biss. C. C. 114; 1 Chitty's Pl. (16th ed.) 151–52.    (2.) The third count being in case, there was no misjoinder, and no departure from the original complaint.—*Dixon v. Barclay*, 22 Ala. 370; *Wilkinson v. Mosely*, 30 Ala. 563.    (3.) The proof fully sustained

the allegations of the third count, and the plaintiff was entitled to recover the damages which the charge of the court allowed him.— *Wilcox v. Plummer*, 4 Peters, 172 ; *Everson v. Powers*, 89 N. Y. 527 ; *Allison v. Chandler*, 11 Mich. 542 ; *Masterson v. Brooklyn*, 7 Hill, N. Y. 61 ; *Whitney v. Slayton*, 40 Maine, 224 ; Sedgw. Dam. 119–23 ; Wood's Mayne on Damages, §§ 103–4 ; 31 Vermont, 582 ; 23 N. H. 83 ; 4 Dall. 147 ; *Crow v. Boyd*, 17 Ala. 51 ; *Strother v. Butler*, 17 Ala. 733.

STONE J.—The original complaint in this case is in trover, and contains two counts. The suit was commenced in April, 1879. At the Fall term, 1882, the complaint, with leave of the court, was amended by adding a third count. The defendant demurred to the complaint, as amended, assigning as one of the grounds that there was a misjoinder of count, in this, that the first two counts are in trover, and the third in assumpsit. If this be true, then the demurrer ought to have been sustained ; for trover, which is *ex delicto*, can not be joined in the same action with assumpsit, which is *ex contractu*. Furthermore, on the hypothesis that the third count is in assumpsit, its allowance would have been the introduction of a new cause of action, a departure from the wrong complained of in the first two counts, and not allowable, even under our liberal system of amendments.—*Crimm v. Crawford*, 29 Ala. 623 ; *Johnson v. Martin*, 54 Ala. 271 ; *Simpson v. M. & C. R. R. Co.*, 66 Ala. 85 ; *Steed v. McIntyre*, 68 Ala. 407. For the appellee it is contended, that the third count is in case. Counts in trover and in case may be joined in the same action (1 Brick. Dig. 24, § 54), while assumpsit and trover cannot be so joined.—*Ib.* 24, § 53.

The history of the action on the case, or special action on the case, as it was originally called, is well known to the profession. It is not one of the original common-law writs. In the progress of judicial contestation, it was discovered that there was a mass of tortious wrongs, unattended by direct and immediate force, or where the force, though direct, was not expended on an existing right of present enjoyment, for which the then known forms of action furnished no redress. The action on the case was instituted to meet this want. It may then be styled a suppletory, personal action, *ex delicto*. It was designed to be residuary in its scope, but is always classed among the actions in tort.

For mere breaches of ordinary contracts, without more, this action will never lie ; for, in such breach of promise, there is no element of tort, in the legal sense of that term,—" a wrong independent of contract."—Bouvier's Dic. Nevertheless, wrongs which will maintain an action on the case are frequently

[Mobile Life Insurance Co. v. Randall.]

committed in the non-observance of duties, which are but the implication of contract-obligation. Contracts have a leading, primary obligation—to do a specified act; to perform ·a specified service; or to pay or deliver a specified thing of value. A mere failure to perform such a contract-obligation is not a tort, and it furnishes no foundation for an action on the case. But contracts, however briefly expressed, are to be interpreted in the light of great legal principles, which enter into and permeate all human transactions. Hence, the duty of requisite skill, fidelity, diligence, and a proper regard for the rights of others, is implied in every obligation to serve another. The degree of these qualifications is graduated by the nature of the service undertaken; but they inhere in, and form a part of all dealings between man and man. The observance of these duties is necessary to the peace, good order and success, of all municipal regulation. Now, for a breach of the contract-obligation, the remedy is an action *ex contractu.* If the implications, or collateral duties of the service, be disregarded, and injury ensue, this is a tort, for which an action on the case will lie.

Mr. Justice Parsons, in *Wilkinson v. Mosely*, 18 Ala. 288, said: "Perhaps the best criterion is this: if the cause of action, as stated in the declaration, arises from a breach of promise, the action is *ex contractu;* ·but, if the cause of action arises from a breach of duty growing out of the contract, it is in form *ex delicto*, and case." In 2 Wait's Ac. and Def. 100, the doctrine is thus stated: "When there is a contract, either express or implied, from which a common-law duty results, an action on the case lies for the breach of that duty; in which case, the contract is laid as mere inducement, and the tort arising from the breach of duty as the *gravamen* of the action. Thus, if a lawyer or physician is engaged by special contract to render professional service, and, in the performance of such service, he is guilty of gross ignorance or negligence, an action on the case will lie against him, notwithstanding such special contract." See, also, Pomery on Rem. §§ 567, 573.

Justice Parsons, in *Wilkinson v. Mosely, supra,* illustrates his view of the question as follows: "If the declaration allege the hiring of a horse to ride to a certain place, and that the defendant rode him so immoderately that he died, this would be case; for the contract of hiring imposed upon him the duty to ride in reason, or not unreasonably fast. But, if the declaration allege the hiring, and that he promised to ride with reasonable speed, but, not regarding his promise, he rode the horse immoderately, whereby he died, the action may be considered assumpsit." We do not doubt that assumpsit would lie in the case last supposed; but case would lie also. It was

12

a case, not only of a breach of contract, but a violation of a duty enjoined by law, and therefore a tort.—*Blick v. Briggs*, 6 Ala. 687; *Myers v. Gilbert*, 18 Ala. 467. In such case, the pleader has the option to sue in assumpsit, for the breach of the contract; or in case, for the violation of the duty imposed by law. Wherever there is carelessness, recklessness, want of reasonable skill, or the violation or disregard of a duty which the law implies from the conditions or attendant circumstances, and individual injury results therefrom, an action on the case lies in favor of the party injured; and if the transaction had its origin in a contract, which places the parties in such relation as that, in performing or attempting to perform the service promised, the tort or wrong is committed, then the breach of the contract is not the *gravamen* of the suit. There may be no technical breach of the letter of the contract. The contract, in such case, is mere inducement, and should be so stated in pleading. It induces, causes, creates the conditions or state of things, which furnishes the occasion of the tort. The wrongful act, outside of the letter of the contract, is the *gravamen* of the complaint; and in all such cases, the remedy is an action in the case. Take, for illustration, the contract of a carpenter to repair a house, partly decayed, or otherwise defective. The implications of his contract are, that he will bring to the service reasonable skill, good faith, and diligence. If he fail to do the work, or leave it incomplete, the remedy, and only remedy against him, is *ex contractu*. Suppose, in the attempted performance, he, by his want of skill or care, destroys, damages, or needlessly wastes the materials furnished by the hirer; or, suppose that in making the needed repairs, he did it so unskillfully or carelessly as to damage other portions of the house; this is tort, for which the contract only furnished the occasion. The contract is mere inducement, and the action is on the case. We may add, that there are many cases in which the pleader has the election of suing in assumpsit or case.

In the third count, or amended complaint, we find this averment: "Plaintiff avers that the defendant, disregarding the rights of plaintiff under said agreement, and in violation of said agreement, did, to-wit, on the 1st day of September, 1878, wrongfully discharge plaintiff from its said service." This averment, it is contended, if all others fail, fixes the character of this count as in case. The vice of this argument lies in this: The complaint shows that plaintiff was the agent of the defendant corporation, and it entirely fails to show that his appointment was for any given time, except from year to year, or that, at the time of his alleged discharge, he was acting as agent by virtue of any appointment, or renewal of appointment. The count avers that plaintiff became defendant's

[Mobile Life Insurance Co. v. Randall.]

agent on the —— day of ——, and " that the contract was re-
newed from time to time, until, to-wit, on the 3d day of April,
1876, the said contract or agreement was so modified as to
give or entitle plaintiff" to an increased rate of commissions.
Not a word said about the renewal of his appointment, or the
duration of any appointment he had received.  So, it does not
appear, either by averment, or even by inference from any
averred fact, that at the time of the alleged unauthorized dis-
charge, he was the appointed agent of defendant, or in fact
was, in any sense, the defendant's agent.  The renewal con-
tract was in April, 1876, while the alleged discharge was in
September, 1878,—nearly two and a half years afterwards.  A
fact so important to plaintiff's rights can not be taken by infer-
ence.  He can not have been wrongfully discharged, unless he
shows he was in the service by virtue of appointment, or re-
newal of appointment; or, at all events, that he was in the
service, and in the performance of his duties as such agent.

The third count, then, is narrowed down to this :  It avers
that, under the terms of the modified contract of April, 1876,
plaintiff was entitled to a certain per-cent. on annual renewals
of a given number of policies, for and during the term of his
natural life, which it avers would amount to a named. sum.
The breach assigned is, that defendant denies plaintiff all right
to said renewal premiums, or any interest therein, and still
refuses to recognize plaintiff's interest therein.  There is not
an element of legal tort in the averments of this count.  If a
denial of liability to pay money, claimed by another, be a tort
that will maintain an action on the case, then that action has a
very wide scope; much wider than the appellee himself would
contend for.

We have carefully examined the facts and history of this
case, and, basing our judgment alone on the two contracts of
February, 1874, and April, 1876, and the testimony of plaintiff
himself, we announce the following conclusions: 1. There is
no conversion that will maintain the action of trover.  2. If
the defendant corporation discharged plaintiff from its service,
the latter's prior violation of the contract of February, 1874,
justified it in so doing.  The facts will not support an action
on the case.

It results from these principles, that the present complaint
can not be so amended as to authorize a recovery.  If the
plaintiff has any cause of action, it is for his interest in the
renewal premiums as they are realized.

Reversed, but the cause need not be remanded.