275 So.2d 124

**C & C PRODUCTS, INC., a corporation and Roy A. Marlow**

v.

**PREMIER INDUSTRIAL CORPORATION, a corporation.**

**SC 92.**

Supreme Court of Alabama.

Dec. 21, 1972.

Rehearing Denied Feb. 1, 1973.

180

Rives, Peterson, Pettus, Conway & Burge and W. Eugene Rutledge, Birmingham, for appellee.

Cabaniss, Johnston, Gardner & Clark and Drayton Nabers, Jr., Birmingham, for appellant C & C Products, Inc.

Bainbridge & Mims, Birmingham, for appellant Roy A. Marlow.

HARWOOD, Justice.

Premier Industrial Corporation filed a bill in the Circuit Court of Jefferson County, in Equity, against C & C Products Corporation, and Roy A. Marlow. The bill sought injunctive relief and damages.

The bill alleges in substance that Premier and C & C are Ohio corporations engaged in the business of designing, developing and marketing various types of maintenance products.

C & C was organized by Leo Chaplin and his son Lee Chaplin in April 1966. It is a family owned corporation, and in direct competition with Premier.

Premier markets its products through independent sales agents who are assigned specific territories. The bill avers that these agents are carefully selected and trained and are equipped with customer lists and customer record books (dossiers on individual customers) at great expense to Premier.

Leo Chaplin was first employed by Premier in 1951. He was promoted several times, and was a Vice President of Premier at the time he voluntarily left the company in 1965.

Leo Chaplin, during his entire time with Premier, was responsible for the recruitment of independent sales agents, which included explaining the employment contracts and obtaining the prospective agent's signature to such contract.

Lee Chaplin likewise was employed by Premier from 1958 until 1964. He served first as an independent agent and had been promoted to a district manager when he left Premier. His duties during at least a part of the time he was with Premier included recruitment and training of independent agents, and obtaining their signatures to agency contracts.

The respondent Marlow was employed by Premier in July 1956 as an independent agent. He received various promotions and his position from 24 January 1969 to 29 February 1972, was that of District Manager for Premier in a territory assigned him in Alabama.

Both of the Chaplins and Marlow had each signed agency contracts with Premier, and had required numerous agents they had recruited to sign such contracts.

Such contracts contained a covenant that the employee, during the term of the contract, and for two years after its termination, would not directly or indirectly, enter into or engage in any business in competition with Premier.

The bill further avers that despite their knowledge of the contracts between Premier and its independent sales agents, Leo Chaplin and Lee Chaplin, since 1965, have persuaded and recruited independent sales agents of Premier to leave Premier and work for the Chaplins, or their businesses in the territories assigned to such agents by Premier.

It was further alleged that during the week of 11 October 1971, Leo Chaplin, and/or Lee Chaplin, acting for C & C, entered into a conspiracy with respondent Marlow, then a district manager for Premier, that Marlow would continue to "represent" himself as district manager for Premier, but at the same time would assist C & C in obtaining the services of independent sales agents of Premier; that in pursuance of this conspiracy the Chaplins, acting for C & C, and with Marlow's assistance, attempted to induce several of Premier's independent sales agents to leave Premier and go with C & C, and in fact did induce four of such agents to leave Premier and work for C & C in the territory assigned to them by Premier. The four agents were S. Forest Barker, George Max Sides, Robert C. McMillan, and Verdery A. Clark. These agents were to sell for C & C in the same territory assigned to them by Premier the same type of products they had formerly sold for Premier.

The bill prayed for injunctive relief, and since the Chancellor's preliminary injunction was in the identical language of the prayer, we will not here set the prayer out.

Upon the filing of the bill, and its presentation to the Chancellor, he forthwith granted a preliminary injunction as prayed for, and the respondents C & C and Marlow were thereby enjoined from:

"(a) Soliciting, attempting to solicit, or inducing, procuring, attempting to induce or attempting to procure further breaches of contract between complainant and any of its sales agents and/or management personnel.

"(b) From continuing to employ or attempting to employ former sales agents or management personnel of complainant in violation of their contracts with complainant, specifically: S. Forest Barker, George Max Sides, Robert C. McMillan and Verdery A. Clark.

"(c) From accepting any sales or orders obtained by, submitted by, or from the territory assigned by C & C to any of the former sales agents or management personnel of complainant in violation of their contract with complainant, specifically: S. Forest Barker, George Max Sides, Robert C. McMillan and Verdery A. Clark."

Upon being served with a copy of the preliminary injunction, the respondents each filed identical pleadings consisting of, (1) a demurrer to the bill based on some 192 grounds, (2) a motion to discharge the injunction, (3) a motion to dissolve the injunction, and (4) a sworn answer specifically providing that the demurrers and motions to discharge and dissolve were not to be deemed as waived.

The answers in substance deny that the respondents individually or jointly, sought to induce any salesman to begin work with C & C in breach of any enforcible provi-

sion of the contract between the salesman and Premier, and each of the facts constituting the basis of Premier's complaint is separately denied.

The answers also assert several affirmative defenses. First, it is asserted that for years Premier has done business in Alabama. The bill itself asserts that Premier does business in each state of the United States. The answer further asserts that Premier is not qualified to do business in Alabama, which allegation is supported by Exhibit A attached to and made a part of the answer, which exhibit is a certificate of the Secretary of the State of Alabama that Premier is not qualified to do business in Alabama. It is further averred that the present complaint seeks to specifically enforce in this State contracts to be wholly performed in the States of South Carolina, Florida, and Mississippi, i. e., the non-competition provisions of the employment contracts between Premier and George M. Sides, whose assigned territory was in Mississippi, Robert C. McMillan, whose assigned territory was in South Carolina, and S. Forest Barker and Verdery A. Clark, whose assigned territories were in Florida.

It was further averred that in February 1972, Premier had instituted a suit against C & C and its chief executive officer in Ohio, and that a comparison of the allegations made in the Ohio suit with those made in the present suit, shows that the complaint in this case is virtually the same as the complaint in the Ohio case; that on 26 April 1972, Premier filed an action in Richland County, South Carolina, against Robert C. McMillan, seeking to enforce the non-competition provision of his contract with Premier, McMillan being a resident of South Carolina, and the territory assigned him under his contract with Premier being in that State; that on 18 May 1972, Premier filed proceedings in the United States District Court for the Southern District of Mississippi against George M. Sides. Sides was a resident of Mississippi, and the territory assigned him under

his employment contract with Premier was in Mississippi.

Preliminary injunctions were denied in the South Carolina and Mississippi proceedings, and the suit in Ohio was dismissed on motion of Premier.

It should also be noted that all of the contracts between Premier and its agents purport that they were made in Ohio and are to be governed both as to interpretation and performance by the laws of Ohio.

After a hearing on the respondents' motion to dissolve and to discharge the preliminary injunction, the Chancellor overruled each motion separately and severally.

This appeal is from said ruling overruling the motions to discharge and dissolve the temporary injunction.

At the threshold of a consideration of this appeal, the true nature of the cause of action made by the bill must be determined, that is, whether it sounds in tort or in contract. The appellants (respondents below) contend that the action arises in contract, while counsel for the appellee insists that the action arises in tort. The necessity for determining the nature of this cause of action is that if in truth and in fact the cause does sound in contract, the action of the court in refusing to dissolve or discharge the preliminary injunction must be deemed erroneous for reasons hereinafter set forth.

There can be no doubt that counsel for the appellee has attempted to frame the bill as sounding in tort. The allegations of the bill are that the respondents entered into a conspiracy to induce the sales agents of Premier to breach their contracts with Premier and enter the employment of C & C. Typical of the averments of this lengthy complaint are paragraphs 22 and 23 which read as follows:

"22. Complainant avers that the said Leo M. Chaplin and Lee J. Chaplin have for several years prior hereto engaged in

the practice of attempting to unlawfully and maliciously procure a breach of the contractual relationship between complainant and many of its independent agents. Complainant further avers that at least during the period November 1, 1971, until the present time the said Leo M. Chaplin and Lee J. Chaplin, acting for and on behalf of the respondent C & C, have engaged in the practice of unlawfully and maliciously seeking to procure the breach of contracts between Premier and many of its independent agents and toward this end formed a conspiracy with the respondent Marlow as aforesaid.

"23. Complainant avers that as a result of said fraudulent, deceitful, malicious and unlawful activities of the respondents, several of the independent agents of complainant named in paragraph 19 hereof have been caused to breach their said contracts with complainant and to sell for C & C the same type products they previously sold for complainant in the same territories in which they previously acted for complainant in violation of their said contracts with complainant, copies of which are attached hereto as Exhibit 'C' and made a part hereof as if fully set out herein."

In each paragraph of the prayer it is prayed that the respondents be enjoined from doing certain acts *in violation of Premier's contracts* with its sales agents.

■ The character of a bill is determined by its substantive averments and the nature of the relief sought. Jones v. Henderson, 228 Ala. 273, 153 So. 214; Hooke v. Hooke, 247 Ala. 450, 25 So. 33. When the averments and prayer in a bill indicate that a complainant is seeking relief adapted to a particular form of action, it must be concluded that the cause stated in the bill belongs to that form of action. See Whilden & Sons v. Merchants' & Planters' National Bank, 64 Ala. 1.

It is stated in several of our cases that if a cause of action declared in pleading arises from a breach of a promise, the action is ex contractu; if it arises out of a breach of a duty which grows out of the relationship of the parties because of the contract, the action is in form ex delicto. Chambers v. Birmingham Trust & Savings Co., 232 Ala. 609, 168 So. 893; Wesson Oil & Snowdrift Co. v. Orr, 274 Ala. 463, 149 So.2d 462.

In the fairly recent case of Waters v. American Cas. Co. of Reading, Pa., 261 Ala. 252, 73 So.2d 524, we find the doctrines of our cases pertaining to the point now being considered summarized as follows:

"This Court has long since taken the position that under certain circumstances, for the breach of a contract there may be either an action of assumpsit or one in tort. That means that when there is a contract *expressed to exercise reasonable diligence* in the performance of an act, or when there is a specific contract to do an act, a failure to exercise reasonable diligence on the one hand or to do the act on the other gives rise to an action of assumpsit. But when the contract is to exercise reasonable care to perform the act, a failure to exercise such reasonable care may be redressed by either assumpsit or in tort. Mobile Life Ins. Co. v. Randall, 74 Ala. 170; Tennessee Coal, Iron & Railroad Co. v. Sizemore, 258 Ala. 344, 62 So.2d 459. When the contract *does not in terms require reasonable care in doing the act stipulated to be done,* the law imposes a duty—*but does not imply a contract*—to exercise due care in doing the act * * *"

We also note that the non-competition clause of the agreements between Premier and its sales agents are effective during the term of the agreements and for two years after the termination of the agreements. Under such provision the agent agreed not to engage in any business which

competed with Premier, nor to solicit or sell any products of a competing firm, nor to assist in any wise any person, firm, or corporation competing with Premier.

Thus the wrongs averred in the bill to have been committed by the respondents against Premier were specifically covered in the contract between Premier and its agents, including Marlow, giving rise to an action in assumpsit. Every wrong alleged is within the letter of the contract.

Our Constitution provides in Section 232 that:

"No foreign corporation shall do any business in this state without having at least one known place of business and an authorized agent or agents therein, and without filing with the secretary of state a certified copy of its articles of incorporation or association. * * *"

Sections 21(90)–21(98), Title 10, Recomp. Code 1958, (Pocket Part) pertain to foreign corporations doing business in this state. Section 21(90) and 21(91) set forth the methods by which a foreign corporation may qualify to do business in this state. Section 21(92) provides that it is unlawful for any foreign corporation to engage in or transact business in this state before qualifying to do so, and Section 21(94) provides that any foreign corporation who shall make any contract to do business in this state before qualifying shall be guilty of a misdemeanor.

Further, Section 21(89), Title 10, reads:

"All contracts or agreements made or entered into in this state by foreign corporations which have not qualified to do business in this state shall be held void at the suit of such foreign corporation * * *" (subject to certain exceptions not here applicable.) Par. ours.

Section 345, Title 51, also relative to foreign corporations, provides that such corporations, in addition to any other state license and privilege taxes required by law to be paid, shall secure a permit from the Revenue Department when admitted by law to do business in this state, and in parts pertinent to this review, the section further provides:

"No corporation, its agents, officers, or servants shall transact any business within the state of Alabama without having first procured said permit and all contracts, engagements or undertakings or agreements with, by or to such corporations made without obtaining such permit shall be null and void."

While the contracts between Premier and its sales agents purport to be made in Ohio and provide the contracts are to be governed both as to interpretation and performance by the law of Ohio, the law of Ohio was neither pleaded nor proven.

■ Ordinarily, if the law of a sister state is not pleaded and proven, and such state is of common origin with Alabama, the presumption is indulged that the law of such sister state is the common law. If such sister state is not of common origin with Alabama, and one which this court judicially knows as an historic fact was acquired by purchase from Spain or France, such as Florida, Texas, or Louisiana, then the presumption indulged is that the law of such sister state is the same as the law of Alabama, including our statutory law. Milton v. Summers, 280 Ala. 106, 190 So.2d 540.

■ Where, however, the law of a sister state concerns a business corporation, and the law of such sister state is not pleaded nor proved, then the presumption is indulged that the law of such sister state is the same as the law of Alabama, the same as though the sister state was not of common origin with Alabama. The reason for this latter rule is stated in Nelson v. Darley, 239 Ala. 87, 194 So. 177, (opinion on rehearing), as follows:

"The substance of what we hold in the foregoing opinion is that business corporations were unknown to the common law, and are of statutory origin. There-

fore there is no reason to indulge the presumption that the common law prevails in the States of Illinois and Delaware; the law of those states not being presented by appropriate pleadings and proof the courts must apply our law, the law of the forum in disposing of the case."

■■ Where a contract is for the performance of an act, and there is absent any contractual provision that the act will be done in a proper manner or free from negligence, the law creates a duty, but does not imply a contract, that the act will be done in a proper manner when its performance is undertaken, and a breach of this legally created duty will give rise to an action on the case, or ex delicto. In the present case, under the averments of the bill, there was a total breach of the contract by the respondents' failure to conform. A mere failure to perform a contract obligation is not a tort, and it furnishes no foundation for an action on the case. Mobile Life Ins. Co. v. Randall, 74 Ala. 170; Waters v. American Cas. Co., etc., supra; Garig v. East End Memorial Hospital, 279 Ala. 118, 182 So.2d 852.

■ The duty created by law which gives rise to an ex delicto action under certain circumstances upon breach of a contract is a duty collateral to the contract. The contract creates, or induces, or causes a condition, or state of things, which furnishes the occasion for the tort. The tort is beyond the letter of the contract, and in such situation the cause of action is in case. See Mobile Life Ins. Co. v. Randall, supra.

■ We do not see, however, that a contract with a foreign corporation which is unenforcible and unlawful in this state because such corporation has failed to qualify to do business in this state, can be said to give rise to any implied legal duty. To so hold would be an anomoly.

■ Nor can it be said that the alleged unlawful conspiracy between the Chaplins and Marlow to unlawfully procure a breach of the non-competition clauses in the contracts between Premier and its sales agents, creates any implied tort. This for the reason that Section 54, Title 14, Code of Alabama 1940, prohibits combinations or conspiracies to injure *lawful* businesses. Premier's business operations in Alabama were not lawful as shown ante.

■ We hold, therefore, that the cause of action stated in the bill must be deemed to arise in contract, and not in tort.

■ It follows that under the doctrines of our cases, and applying the law of Alabama as we must, since the law of no other state was pleaded or proven, Premier was not entitled to have awarded in its favor the preliminary injunction. The public policy evidenced by our Constitution, statutes, and decisions is clear and to the effect that for a foreign corporation to gain benefits in our courts in contract actions, such corporation must first qualify to do business in this state in order that such corporation may be subject to the process of our courts, thus affording a mutality of remedy between it and the citizens of this state. Gray-Knox Marble Co. v. Times Building Co., et al., 225 Ala. 554, 144 So. 29.

As stated in Calvert Iron Works, Inc. v. Algernon Blair, Inc., 284 Ala. 655, 227 So. 2d 424:

"This court has repeatedly held that when a foreign corporation comes into the State of Alabama, and does business in the State of Alabama, entering into contracts pursuant to such business, that such contract may not be enforced in the courts of this State. American Amusement Co. v. East Lake Chutes Co., 174 Ala. 526, 56 So. 961; Muller Manufacturing Co. v. First National Bank of Dothan, 176 Ala. 229, 57 So. 762; Gray-Knox Marble Co. v. Time Building Co. et al., supra. * * *"

It is our conclusion therefore that the Chancellor erred in denying the motions of

the appellants to dissolve the preliminary injunction for the reasons above set out.

Accordingly the orders denying appellants' motions to dissolve the preliminary injunction are hereby reversed and the cause is remanded for entry of orders consonant with this opinion.

Several other points are strenuously argued by counsel for appellants. Since what we have written above necessitates a reversal of the order denying the motions to dissolve the preliminary injunction, we see no purpose in discussing these additional points.

Reversed and remanded with instructions.

HEFLIN, C. J., and MERRILL, MADDOX and FAULKNER, JJ., concur.