Appeal by the defendant, United States Fidelity Guaranty Co. (USFG), from an order holding that it is obligated to defend the plaintiff in a collateral action. We affirm.
The defendant issued a Comprehensive General Liability policy of insurance to the plaintiff, National Tank Machine Works, Inc. (National Tank) for a policy period running from October 4, 1976 to October 4, 1977. Among the policy provisions included were the following:
I COVERAGE A — BODILY INJURY LIABILITY
 The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
A. bodily injury or
 B. property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, . . .
Under the DEFINITIONS "occurrence"
 means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected or intended from the standpoint of the Insured.
Following the coverage portion above certain exclusions were expressed:
This insurance does not apply:
 (a) to liability assumed by the Insured under any contract or agreement except an incidental contract; . . .
By endorsement another exclusion was added:
 It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage and, if a Contractual Liability Insurance . . . Coverage Part forms a part of the policy, such insurance as is afforded by such Coverage Part for Contractual Bodily Injury Liability and Contractual Property Damage Liability, does not apply to bodily injury or property damage included within the Completed Operations Hazard or the Products Hazard.
The insured, National Tank, does business under the trade name of National Pool Equipment Company, selling swimming pool equipment and supplies. In January 1977 it entered into a contract with Continental Contractors, Inc., a swimming pool contractor, to provide six lifehooks for a pool which Continental was constructing for the City of Hartselle. Continental's contract with Hartselle required Continental to provide six lifehooks, each "[to be] supplied with a one piece 16' long, in [sic] diameter aluminum handle and shall be 7570 or equal." National Tank's subcontract with Continental required it to supply Continental with "6 No. Lifehook[s] w/16' handle."
In performance of their contract National Tank furnished the lifehooks with two-piece telescoping handles capable of being extended from eight to sixteen feet in length, and Continental in turn equipped the Hartselle pool with these lifehooks.
On July 22, 1977 Marshall Lampkin, an employee of the City of Hartselle, was drowned while in the pool. His administratrix subsequently filed an action against National Tank, et al. alleging, inter alia, that while Lampkin's supervisor attempted to retrieve him from danger by using one of these lifehooks, the telescopic handle came apart and thus the supervisor was unable to rescue Lampkin. *Page 927 
The original complaint filed by Lampkin's administratrix was admittedly grounded upon product liability under the Alabama Manufacturers' Extended Liability Doctrine. When USFG received notice of this action it denied any responsibility for defense for the reason that National Tank did not have products liability coverage. National Tank then brought this action for a declaratory judgment to determine whether it was covered under the policy. Following a hearing, the trial court entered an order holding that USFG was under no obligation to defend the Lampkin lawsuit, but added that "[t]his however, does not release the United States Fidelity and Guaranty Company from any judgment which might be rendered in the event of an appropriate amendment to the complaint filed. . . ." Thereafter Lampkin's administratrix amended her complaint by adding Counts 7-X and 8-Y. The pertinent provisions of Count 7-X are:
 [T]he defendant CONTINENTAL CONTRACTORS, a Corporation, constructed said swimming facility under a written contract according to specific plans and specifications as to equipment and products to be furnished by said defendant at said facility, which said specifications and plans specified that said defendant should furnish safety hooks or life hooks in the execution of its contract to be used by said facilities at said swimming pool of aluminum construction, sixteen feet in length with a solid one-unit aluminum handle, and that contrary to said specifications and plans, said defendant, and all other defendants in this cause, negligently or wantonly substituted in place and in lieu of said specified one-unit, sixteen foot aluminum handle or safety or life hook, a telescopic aluminum handle in two separate units with a locking cam on the bottom end thereof.
 The plaintiff further alleges that the defendant, PHILIP AABERG, negligently or wantonly approved the substitution of said safety hook handle, or he negligently or wantonly omitted to disapprove of said substitute safety hook handle, and that as a proximate consequence of said combined and concurring negligence or wantonness of each of said defendants, plaintiff's intestate was drowned.
Count 8-Y contained substantially the same allegations of negligence or wanton conduct proximately resulting in the intestate's drowning.
In due course the trial court found that under the amended complaint USFG was obligated to defend National Tank in the action brought by Lampkin's administratrix. The narrow issue before us, therefore, is whether those allegations fall within the terms of the risks insured against and, specifically, whether they are within either of the exclusions noted.
Plaintiff concedes that no products liability coverage exists under the policy and therefore the first order of the trial court was correct. Plaintiff maintains, however, that the complaint as amended proceeds not upon the delivery of a defective product but from the negligent or wanton delivery of the wrong product. Those allegations are sufficient to require a defense for an "occurrence" under Coverage A, as "occurrence" is defined in the policy, unless one of the exclusions applies.
We agree with the defendant that our obligation, upon review, is to construe the policy rather than to make a policy for the parties. In applying that injunction, of course, we cannot by the same token ignore the allegations which call the policy terms into question. The allegations of the amended complaint pertain to an action ex delicto, arising out of a contractual relationship, to be sure, but not relying upon it. C CProducts, Inc. v. Premier Industrial Corp., 290 Ala. 179,275 So.2d 124 (1973). Those allegations do not depend upon any "liability assumed by the Insured under any contract" but upon an alleged breach of duty implied by law; hence that exclusion does not apply. United States F. G. Co. v. Birmingham OxygenServ., Inc., 290 Ala. 149, 274 So.2d 615 (1973). See alsoAmerican Casualty Ins. Co. v. Timmons, 352 F.2d 563 (6th Cir. 1965); Lumberman's Mutual Casualty Co. v. Town of Pound Ridge,362 F.2d 430 (2nd Cir. 1966); and J.L. Simmons *Page 928 Co., Inc. v. Fidelity and Casualty Co., 511 F.2d 87 (7th Cir. 1975).
It is also clear that the "Completed Operations Hazard" and the "Products Hazard" exclusion, likewise, do not apply. Under the policy "DEFINITIONS" the completed operations hazard exclusion does not include bodily injury arising out of: "(b) the existence of tools, uninstalled equipment or abandoned or unused materials." Taking the allegations of the plaintiff's complaint literally, the complaint is based upon injury arising out of the failure to install the proper equipment (which was uninstalled). Moreover, it is arguable whether this exclusion is applicable when the plaintiff's theory is that the insured did not "complete his operations" under its contract because up to the time of the injury alleged the insured had not performed his promissory obligation by delivering the lifehooks contracted for. The term "operations" does not unambiguously exclude that risk. Lumberman's, supra at 432; accord, Tyler v.Insurance Co. of North America, Inc., Ala., 331 So.2d 641
(1976).
We have limited our review to the issue of whether or not the defendant was obliged to defend the Lampkin action. From what we have stated it follows that the order of the trial court must be, and is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.