**EASTERN SHORE MARINE, INC., Plaintiff,**

v.

**M/V MISTRESS, her engines, etc., in rem, Defendant.**

**Civ. A. No. 88–0968–BH–C.**

United States District Court, S.D. Alabama, S.D.

Aug. 15, 1989.

A. Clay Rankin, III, Mobile, Ala., for plaintiff.

Byron A. Lassiter, Fairhope, Ark., for claimant.

ORDER

HAND, Senior District Judge.

The plaintiff, Eastern Shore Marine, Inc. (hereinafter referred to as "ESM") is an Alabama Corporation, having its principal place of business in Fairhope, Alabama. The defendant Duncan Aircraft Sales of

Florida, Inc. (hereinafter referred to as "Duncan") is Florida Corporation, having its principal place of business in the State of Florida. Duncan is a foreign corporation not qualified to do business in the State of Alabama, having failed to obtain a certificate of authority to transact business in Alabama from the Secretary of State.

Duncan is the owner of the defendant vessel *M/V Mistress*. On or about May 15, 1987, Duncan and Walter Marine Services, Inc. entered into an agreement pursuant to which Walter Marine Services, Inc. would make certain repairs to the *M/V Mistress*. On March 15, 1988, ESM purchased the assets of Walter Marine Services, Inc. On the same date, ESM and Duncan both agreed that ESM would finish the work not completed by Walter Marine Services, Inc. on the *M/V Mistress*, as well as undertake to make additional repairs. Duncan and ESM also agreed that Duncan would pay ESM the balance of the money due under the agreement between Walter Marine Services, Inc. and Duncan. In accordance with the aforementioned agreement, ESM commenced work on the *M/V Mistress*.

On November 23, 1988, ESM filed a complaint against the *M/V Mistress*, invoking the admiralty jurisdiction of this Court pursuant to Federal Rule of Civil Procedure 9(h). ESM's complaint alleged, *inter alia*, that they had performed the necessary repairs and services, yet Duncan had failed to pay ESM, despite due demand, the balance due and owing to ESM in the amount of fifteen thousand dollars ($15,000.00), plus interest. Also on November 23, 1988, ESM moved the Court for an Order whereby the *M/V Mistress* would be arrested. That motion was granted, and the *M/V Mistress* was arrested.

On November 30, 1988, Duncan filed a claim to the *M/V Mistress* along with an answer and counterclaim to ESM's complaint. Duncan's counterclaim asserted that ESM breached its contract with Duncan to complete the repairs to the *M/V Mistress* for a reasonable sum in a timely fashion. On April 28, 1989, Duncan amended its answer and counterclaim to add an additional count to its counterclaim, which count stated that ESM made repairs to the *M/V Mistress* in a negligent and unskilled manner.

On May 11, 1989, the Court dismissed Duncan's counterclaim, stating that inasmuch as Duncan is a foreign corporation not qualified to do business in the State of Alabama, it is precluded by § 10–2A–247 *Code of Alabama* (1975) from bringing suit to enforce the subject contract.[1]

On July 28, 1989, Duncan moved the Court to reinstate the previously dismissed counterclaim. On July 31, 1989, Duncan's motion was denied, but Duncan was afforded the opportunity to set out authority by which its tort-based counterclaim may be distinguished from the previously dismissed contract-based counterclaim and thereby elude the bar of § 10–2A–247, *supra*.

Duncan's counterclaim sets out two counts: one sounding in contract and one sounding in tort. As Duncan is not qualified to do business in the State of Alabama, the contract-based counterclaim is due to be dismissed pursuant to § 10–2A–247, *Code of Alabama* (1975). *See also Sanwa Business Credit Corp. v. G.B. "Boots" Smith Corp.*, 548 So.2d 1336 (Ala.1989) ("The combination of labor and construction in a service contract, involving a nonqualified foreign corporation, unequivocally places that contract within the purview of § 10–2A–247(a), *supra*, requiring qualification.").

Duncan contends that § 10–2A–247, *supra*, (hereinafter referred to as the "qualification statute") does not prohibit a nonqualified foreign corporations from asserting non-contractual claims. In support of this contention, Duncan recites the proposition of *First Bank of Russell County v. Wells*, 358 So.2d 435 (Ala.1978):

> We think that which is prohibited in the Alabama statutes are suits on contracts

---

1. All contracts or agreements made or entered into in this state by foreign corporations which have not obtained a certificate of authority to transact business in this state shall be held void at the action of such foreign corporation.... *Ala.Code* § 10–2A–247 (1975).

by unqualified corporations.... We would add—and only such suits. *Id.*, at 437. However, while the Court does not question the above-stated proposition itself, the Court does question the applicability of said proposition to the facts of the case at bar. In other words, is Duncan's tort-based counterclaim distinguishable from their contract-based counterclaim? If the tort-based counterclaim is distinguishable from the contract-based counterclaim, the Duncan successfully eludes the qualification statute. However, if these counterclaims are not distinguishable, then they are barred by the qualification statute and enforcement of these claims may not be had in either state or the Federal courts. *See* Annotation, *Right of Foreign Corporation or Its Assignee to Maintain an Action in Federal Court Which It Could Not Have Maintained In State Court Because of Noncompliance With Conditions of Doing Business In State*, 133 A.L.R. 1171, 1172 (1941).

To answer this question, the Court incorporates the proposition of *C & C Products, Inc. v. Premier Industrial Corp.*, 290 Ala. 179, 275 So.2d 124 (1972). There the Court stated that the character of a claim is determined by its substantive averments and the nature of the relief sought. 275 So.2d, at 128. If a cause of action arises from a breach of a promise, the action is *ex contractu;* if it arises from a breach of a duty which grows out of the relationship of the parties because of the contract, the action is in the form *ex delicto.* 275 So.2d, at 129.

... [U]nder certain circumstances, for the breach of a contract there may be either an action of assumpsit or one in tort. That means that when there is a contract *expressed to exercise reasonable diligence* in the performance of an act, or when there is a specific contract to do an act, a failure to exercise reasonable diligence on the one hand or to do the act on the other gives rise to an action of assumpsit. But when the contract is to exercise reasonable care to perform the act, a failure to exercise reasonable care may be redressed by ei-

ther assumpsit or in tort. [Citations omitted.] When the contract *does not in terms require reasonable care in doing the act stipulated to be done*, the law imposes a duty—*but does not imply a contract*—to exercise due care in doing the act.

*Waters v. American Casualty Company of Reading, Pa.*, 261 Ala. 252, 73 So.2d 524 (1953).

Therefore, a contract for the performance of an act which contains no contractual provision that the act will be done in a proper manner or free from negligence, by law, creates a duty but does not imply a contract, that the act will be done in a proper manner when its performance is undertaken, and a breach of this legally created duty will give rise to an action *ex delicto.* 275 So.2d, at 130. However, no such implied legal duty arises where the underlying contract is unenforceable and unlawful because the party bringing a claim under the contract is a foreign corporation which has failed to qualify to do business in this state. *Id.* "To so hold [otherwise] would be an anomaly." *Id.*

In the tort-based portion of their counterclaim (Count II), Duncan claims:

17. Eastern Shore Marine negligently failed to make certain reparis [sic] to the *M/V Mistress* necessary to place her in a safe and seaworthy condition.

18. Eastern Shore Marine made repairs to the *M/V Mistress* in a negligent, unskilled manner so that it was necessary to have Dog River Marina rework repairs undertaken by Eastern Shore Marine.

However, the Court finds that the duty which Duncan claims Eastern Shore Marine breached by virtue of its alleged negligence arose from the contract executed for the repair of the *M/V Mistress*.

As previously determined, enforcement of that contract by Duncan is precluded by the qualification statute.[2] Inasmuch as the repair contract is unenforceable at the action of Duncan, then there exists no duty upon which Duncan may bring its counterclaim. *See C & C Products, Inc. v. Premi-*

**2.** *See* n. 1, *supra.*

*er Industrial Corp., supra,* 275 So.2d, at 130. Consequently, Duncan has failed to demonstrate that the Constitution of the State of Alabama or the laws of State of Alabama create for them a right of action.

In response to Duncan's arguments, the plaintiff suggests that, regardless of the qualification statute, the interest of judicial economy would be best served if the Court would allow the claimant to proceed on their counterclaim. However, the Court is constrained by the law, and it does not consider the concept of judicial economy to serve as a means of circumventing the law. The rule created by the qualification statute comprises a substantive state law which this Court must apply in accordance with state court decisions. *New Concept Industries, Inc. v. Green,* 646 F.Supp. 1077, 1078 (M.D.Ala.1986). Consequently, the Court must apply the qualification when and where it is appropriate to do so and in a manner consistent with that required by the law of the State of Alabama. The qualification statute, as well as the Constitution of the State of Alabama,[3] when read in light of the decisions of the Alabama Supreme Court, are not couched in permissive language but are *mandatory,* clearly implicating the jurisdiction of either this Court or the State Court over claims such as those presented in the case at bar. Therefore, this Court cannot allow a party to first successfully assert a statutory bar to a claim and then later request the Court to ignore said statute and hear such claims "in the interest of judicial economy."

Accordingly, Duncan's motion to reinstate its counterclaim is due to be, and same is hereby DENIED. The Order of this Court dismissing the counterclaim in its entirety is AFFIRMED.

It is so ORDERED.

---

3. *See Ala. Const.* art XII, § 232.