Case No. 1950180 (Burnett, as receiver of Old Southern Life Insurance Company, appellant), is on appeal from Montgomery County Circuit Court, Judge Charles Price. Cases No. 1950942 and No. 1951011 (National Stonehenge Corporation, appellant; relating to Union Life Insurance Company) are on appeal from the Jefferson County Circuit Court, Judge Marvin Cherner; Cases No. 1950952 and 1951124 (National Stonehenge Corporation, appellant; relating to Employers Insurance Company of Alabama and Employers Life Insurance Company, respectively) are on appeal from the Jefferson County Circuit Court, Judge Jack Carl. Each of these cases was filed separately in either Jefferson or Montgomery County circuit court. Each insurance company involved in these cases is in receivership and is being administered by the Receivership Division of the Alabama Insurance Department. The central issue in each case is whether National Stonehenge Corporation ("Stonehenge"), a consulting company, is entitled to payment for services rendered to these receivership estates.
In 1950180 the State of Alabama ex rel. Mickey DeBellis, as State commissioner of insurance; and Nelson Burnett, as chief of the Receivership Division of the Alabama Insurance Department and as receiver of the various receivership estates (collectively referred to as "Insurance Department"), appeal the trial court's order rejecting the findings and recommendations contained in the report of the special master and awarding Stonehenge $31,000. In cases 1950942, 1950952, 1951011, and 1951124, Stonehenge appeals from each trial court order denying any further payments to Stonehenge and accepting the findings and recommendations contained in the report of the special master. We reverse the order in 1950180 and in that case render a judgment for Burnett, as receiver. We affirm the orders in 1950942, 1950952, 1951011, and 1951124.
On June 10, 1993, then Insurance Commissioner James Dill appointed Ralph Hutchinson as interim Chief of the Receivership Division of the Alabama Insurance Department. Dill obtained approval for this appointment from Michael Bownes, General Counsel for the Insurance Department. After being appointed, Hutchinson petitioned the Jefferson Circuit Court and was subsequently appointed receiver for numerous insolvent insurance companies, including Old Southern Life Insurance Company, National Union Life Insurance, Employers Insurance Company of Alabama, and Employers Life Insurance Company. At the time these events took place, Hutchinson was president and majority stockholder of Stonehenge, which was headquartered in Georgia.
During Hutchinson's tenure as chief of the Receivership Division, the Insurance Department retained Stonehenge to perform consulting and accounting services on behalf of the Insurance Department's various receivership estates. Stonehenge began work on the receivership estates without any formal contractual agreement. After it began its work, Insurance Department officials drafted agreements outlining the terms under which the work would be performed. Stonehenge and the Insurance Department subsequently entered into these formal agreements. Hutchinson served as chief of the Receivership Division until August 23, 1993.
In October 1993, Thomas T. Gallion, counsel for the Insurance Department, petitioned the trial court for an immediate hearing concerning waste of receivership funds by Stonehenge and for an accounting of these funds. The petition put into dispute $78,000 paid to Stonehenge by the various receivership estates starting in June 1993 when Stonehenge began work.
On November 30, 1993 the Montgomery Circuit Court appointed Laura L. Crum as special master, pursuant to Rule 53 A.R.Civ. P., to make a reference report concerning the accounts and records of the receiver and to determine what amount, if any, should be *Page 1278 
paid to Stonehenge in regards to the work performed on the various receivership estates. The special master conducted extensive discovery, taking depositions and obtaining affidavits of Insurance Department employees. The special master also reviewed invoices and time sheets submitted by Stonehenge employees. On March 16, 1995, the special master issued a report recommending that no more payments be made to Stonehenge for the work performed on these various receivership estates.
The special master based her recommendation on the fact that Stonehenge was a foreign corporation and had not qualified to do business in Alabama. The special master reasoned that because Stonehenge had not qualified to do business in Alabama, the agreements entered into by the Insurance Department and Stonehenge for services to be performed in Alabama should be held void and unenforceable. The special master went on to state in her report that Stonehenge appeared to able to qualify to do business after the fact, pursuant to Ala. Code 1975, §10-2B-15.01(a), and suggested the trial court consider this section if Stonehenge presented proof of subsequent qualification. The record indicates that Stonehenge did not attempt to qualify to do business after the fact.
The special master also reported that Stonehenge had failed to provide documentation to substantiate any of the expenses for which it billed the receivership estates. The special master further stated that Stonehenge's statements concerning charges for services were vague and that time sheets for several Stonehenge employees were either not filled out or were filled out with nondescriptive blocks of time. The special master determined that there was a total of $80,740 invoiced by Stonehenge to the receivership estates for which no substantiating time sheets or other documentation existed. She also addressed concerns regarding possible investigations by the attorney general's office of Stonehenge's actions regarding these matters.
The special master also reported that several of Stonehenge's charges to the receivership estates were for items and services that were of little or no benefit to the estates. She reported that the amount billed by Stonehenge for preparation of tax reports greatly exceeded what had been paid for similar services in the past.
In her reference report to the trial court, the special master suggested that no further payments be made to Stonehenge unless it was able to qualify to do business in Alabama. She recommended that no further payments be made in connection with the preparation of tax reports and also recommended a 30% reduction of any other remaining charges to adjust for Stonehenge's inability to substantiate the charges. We note that under A.R.Civ.P. Rule 53, in a nonjury case the court shall accept the findings of a special master unless the findings are clearly erroneous.
On October 11, 1995, the Montgomery Circuit Court in the Old Southern case (1950180), entered an order directing Nelson Burnett, then chief of the Receivership Division, to pay Stonehenge $31,000. Later, the trial court, ruling on a "motion for reconsideration" of that order, held that Stonehenge's failure to qualify to do business in Alabama did not prevent payment under the agreement between the Insurance Department and Stonehenge, because Stonehenge had voluntarily subjected itself to the jurisdiction of the trial court. The trial court also stated that "it would be highly inequitable to refuse to make payments due [to Stonehenge], simply because there might be some technical failure to qualify to do business." The trial court went on to say that the possibility of any pending investigations concerning Stonehenge did not warrant delaying payment where there was no evidence that active investigations were in process.
In the Old Southern case, the Montgomery Circuit Court held that the findings of the special master were not binding on the court. The court held that it had the ultimate authority in this matter and stated that in order to assure that equity is done, it must reject the recommendations of the special master. The court stated that it was not disputed that Stonehenge had provided valuable services to the receivership estates and, therefore, that it is not the role of the trial *Page 1279 
court to look for a reason not to pay Stonehenge for its services already rendered.
In the National Union cases (1950942 and 1951011), the Jefferson Circuit Court held that none of the services for which Stonehenge made a claim had been rendered specifically for National Union and, on that basis, denied Stonehenge's claim for $8,916.87. Alternatively, the trial court based its decision on the opinion of the special master that Stonehenge's failure to qualify to do business precluded it from receiving payment.
In the Employers Insurance Company of Alabama case (1950952), the Jefferson Circuit Court adopted the report of the special master. Further, the trial court found that payments made to Stonehenge from the receivership exceeding $10,000 without court approval violated a previous order of the court prohibiting such payments. The trial court denied the Stonehenge claim of $40,369.51 and ordered Stonehenge to return $21,353.65 to Employers Insurance.
In the Employers Life Insurance Company case (1951124), the Jefferson Circuit Court also adopted the report of the special master. The trial court found that payments to Stonehenge from this receivership exceeding $10,000 without court approval violated the court's previous order. The trial court denied Stonehenge's claim for $42,600.52 and ordered Stonehenge to return $31,418.20 to Employers Life.
The dispositive issue is whether, under these circumstances, Stonehenge has a right to receive payment for services rendered to the Alabama Insurance Department. To answer this question, we must consider Ala. Code 1975, § 10-2A-247, which provides:
 "(a) All contracts or agreements made or entered into in this state by foreign corporations which have not obtained a certificate of authority to transact business in this state shall be held void at the action of such foreign corporation or any person claiming through or under such foreign corporation by virtue of said void contract or agreement. . . ."
This statute was repealed effective January 1, 1995, but it governs the acts involved in these cases because those acts occurred before that repeal. This Court has held that, because of this statute, a foreign corporation cannot enforce a contract that is to be performed in Alabama if the foreign corporation has failed to qualify to do business in Alabama.Sanjay, Inc. v. Duncan Construction Co., Inc., 445 So.2d 876
(Ala. 1983); Green Tree Acceptance, Inc. v. Blalock,525 So.2d 1366 (Ala. 1988). Because of the penal nature of the statute, its application has been limited to those cases in which the action is ex contractu as opposed to ex delicto. Boles v.Midland Guardian Co., 410 So.2d 82 (Ala.Civ.App. 1982). It is undisputed that Stonehenge never qualified to do business in Alabama.
Stonehenge argues that it is trying to enforce its right to payment for services it has already rendered to the Insurance Department. Because of this, Stonehenge argues that it comes within the "equity exception" of § 10-2A-247, which states, "but nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity." Justice Shores has written for this Court:
 "As this Court said in Jones v. Americar, Inc., 283 Ala. 638, 219 So.2d 893 (1969):
 " 'We think that which is prohibited in the Alabama statutes are suits on contracts by unqualified corporations. . . .'
 We would add-and only such suits. This Court has consistently held that foreign, nonqualified corporations are not denied enforcement of property rights by our statute."
First Bank of Russell County v. Wells, 358 So.2d 435
(Ala. 1978). To allow Stonehenge to recover under the theory that equity requires the Insurance Department to pay Stonehenge for its services, even though Stonehenge never qualified to do business in Alabama, would circumvent § 10-2A-247. This Court's prior decisions on this matter have made it clear that foreign corporations cannot circumvent the penal effect of the statute by labeling their claim as something other than contract claim. See, Green Tree Acceptance, 525 So.2d at 1372.
Stonehenge's claims presented in these actions are essentially claims for enforcement *Page 1280 
for the rights Stonehenge derived from the contractual relationship it had with the Insurance Department. We conclude that Stonehenge's claims are ex contractu; therefore, because Stonehenge was doing business in Alabama without having qualified to do so, its agreements are voided by § 10-2A-247. See C.C. Products, Inc. v. Premier Industrial Corp., 290 Ala. 179, 275 So.2d 124 (Ala. 1972). Also, we conclude that the findings of fact of the special master are not "clearly erroneous." See Rule 53, A.R.Civ.P.
1950180 — REVERSED AND JUDGMENT RENDERED.
1950942 — AFFIRMED.
1950952 — AFFIRMED.
1951011 — AFFIRMED.
1951124 — AFFIRMED.
HOOPER, C.J., and ALMON, SHORES, and HOUSTON, JJ., concur.
COOK, J., dissents.