158 So.2d 915

**ALABAMA TERMINIX COMPANY**

**v.**

**Julian P. HOWELL.**

**2 Div. 432.**

Supreme Court of Alabama.

Sept. 26, 1963.

Rehearing Denied Dec. 12, 1963.

Ben F. Ray and Walter M. Campbell, Birmingham, for appellant.

Reeves & Stewart, Selma, for appellee.

HARWOOD, Justice.

This is an appeal from a judgment awarding the plaintiff damages in the amount of $5,400 for the alleged breach of a contract whereby the defendant was to insulate the plaintiff's house against subterranean termites.

The case was submitted to the jury on counts 11, 12, and 13, of the complaint.

These counts aver that on 7 December 1948, the defendant and John B. Ames entered into a contract (a copy of the contract being attached as Exhibit A) by which, upon an initial payment of $606.00, the defendant agreed to inspect and treat the residence and garage of John B. Ames with a chemical known as "Terminix" in accordance with the method and procedure prescribed by E. L. Bruce Company, so as to insulate said residence and garage against subterranean termites. The contract was for one year with a right of annual extension.

It was averred that the contract was extended by Ames in December 1949 by the payment of $48.00 as provided in the contract.

Each of the counts contains the following paragraph:

"Plaintiff further avers that he did purchase the aforedescribed residence and garage located at 2011 Church

Street, Selma, Alabama, from said John B. Ames, on or about September 29, 1950, at which time the aforesaid contract or agreement was assigned to this plaintiff by said John B. Ames for good and valuable consideration, all with the knowledge of defendant. It is alleged further that this plaintiff has annually extended this contract or agreement by the annual payment of $48.00 to defendant, since on or about, to-wit, December 7, 1950, the last payment and extension of said contract or agreement being made by this plaintiff on or about, to-wit, December 7, 1960, and that said contract or agreement has been in full force and effect between the plaintiff and defendant for the period September 29, 1950, to the time of filing this suit."

Count 11 concludes by averring that the contract was breached in that during the period 7 December 1955 to 31 December 1960, the defendant failed to inspect or to chemically treat the described premises in accordance with the terms of the contract so as to insulate the same against subterranean termites, and as a proximate result certain named parts of the residence were damaged by termites, for the repair of which the plaintiff was caused to expend large sums of money.

Counts 12 and 13 are virtually the same as count 11, except that count 12 avers that the defendant negligently failed to perform said contract in that it negligently inspected or treated the premises, while count 13 averred that the defendant negligently failed to do the acts, or negligently omitted to do the same.

The defendant's motion for a new trial being overruled, an appeal to this court was perfected.

The appellant's assignment of error No. 1 asserts as error the overruling of appellant's demurrer to the complaint. Ground 7 of the demurrer is that the complaint fails to allege a written assignment of a right of action in favor of the plaintiff and against the defendant.

Counsel for appellant argues that since section 200, Title 39, Code of Alabama 1940, provides that: "All bonds, contracts, and writings for the payment of money or other thing, or the performance of any act of duty, are assignable by endorsement so as to authorize an action thereon by each successive endorsee * * *" and the complaint failing to allege a written assignment of the contract, and the contract itself failing to carry such assignment, the appellee was not a proper plaintiff in this suit.

■ This argument overlooks the averments in the complaint that Ames assigned the contract to the appellee for a good consideration and with knowledge of the appellant; and that thereafter for some 10 or 11 years the appellant accepted each year from the appellee $48.00 for the renewal of the contract.

■ The above averments justified the court's overruling of the demurrer on the ground asserted. Parties to an executory contract may, by mutual consent, modify it as to parties, terms, or conditions, and a third party may be substituted in place of a party to the original contract by consent of the original parties. Baker v. Green, 17 Ala.App. 290, 84 So. 545.

■ Section 200, supra, pertains to private rights, and no considerations of public policy or morals are involved. A party may, under such conditions waive a rule of law, or statute, or even a constitutional provision. City of Birmingham v. Smyer, 235 Ala. 116, 177 So. 630.

Assignment No. 2 avers error in the giving of appellee's requested charge No. 4. Counsel argues that the charge is abstract and misleading in presupposing that there was evidence enabling the jury to fix the date upon which the damage occurred.

■ By virtue of Section 62, Title 9, Code of Alabama 1940, the appellee was entitled to interest on damages resulting from the breach of the contract from the

date of such breach. Hence it was not necessary to claim interest in the complaint. Roe v. Brown, 249 Ala. 425, 31 So. 2d 599.

The appellant introduced in evidence re-inspection reports showing that during the years 1953, 1955, 1956, 1957, 1959, and 1960, employees of appellant had inspected the house and noted on the records, "House O. K." or "No active termites."

■ The appellant's evidence tended to show that active termites were discovered in the house in March 1960. The date of the breach was left to the jury under the charge. The jury could reasonably infer that the infestation and damage took place subsequent to the inspection in 1959. W. A. Ruffin having testified that if live termites were observed in partially destroyed wood the damage by termites could not be said to be old damage.

No error resulted from the giving of plaintiff's requested charge 4, and assignment of error No. 2 is without merit.

Assignment No. 3 asserts error from the giving of plaintiff's requested charge No. 5.

Counsel again argues that the date of the alleged breach could not be determined from the evidence, and there was no basis for determination of the date from which interest might run.

What we have said in our discussion of plaintiff's given charge 4, is equally applicable to this assignment (No. 3).

Assignments of error Nos. 4, 5, 6, and. 7, relate to refusal of appellant's request for affirmative charges with hypothesis, assignment of error No. 4 being based on refusal of requested charge No. 1, which related to the complaint as a whole, while assignments Nos. 5, 6, and 7, related respectively and individually to counts 11, 12, and 13.

In the trial below the plaintiff-appellee's evidence was directed toward showing that in September 1950, the plaintiff purchased the residence in question from John B. Ames who had owned the residence since 1948.

By a contract dated 12 December 1948, the appellant company, for a consideration of $606.00 paid by Ames, undertook to inspect and treat the house and garage for termites, in accordance with the methods and procedures prescribed by E. L. Bruce Company, so as to insulate the house and garage from attack by termites. The contract was for one year.

The contract provided that upon the payment of $48.00 on the 7th of December of each successive year, the appellant would extend for one year the warranty contained in the original contract. Under the terms of the original contract this warranty called for a reinspection and retreatment of the premises in accordance with the procedures and methods of E. L. Bruce Company so as to insulate the premises against termites.

This contract was extended by Ames for the year 7 December 1949 to 7 December 1950.

Upon sale of the premises by Ames to the appellee, Ames assigned the contract to him.

In December 1950, the appellee received a renewal notice of the contract from appellant, the appellant being designated as "New Owner" in the notice.

On the reverse side of the renewal notice it was stated: "Our original contract" (describing same) "protecting this property from termites provided for Terminix insulation and for reinspection service for a period of one year from effective date shown thereon. Upon the payment of the annual renewal listed on the other side, this contract will be in force for another year."

Thereafter the appellee renewed the contract each year up to 7 December 1960, by the payment of $48.00 upon each receipt of annual renewal notices, which in 1950 was marked "New Owner."

The appellee testified the house was built about 1928, and when he bought the house in 1950, no termite damage was visible, and he had gone through the house at that time.

About four or five years prior to the suit he had had the house painted and at that time some old termite damage was found, but no wings or termites were found and the repair work was minor. This damage had not been there when he bought the house.

On cross examination the appellee was asked if he had noticed any termite destruction inside the house since 1950. The witness replied he had observed occasional swarming of termites inside and on the front; that he noticed the floor along the front sill beginning to sag a little, and that he had the floor "torn into" and extensive damage was found. This was in March 1960. No date as to when the appellee observed the termites swarming inside the house was shown other than they were observed since 1950, though the jury could have inferred from all the testimony that this inside swarming was at or near the time the floor was "torn into."

The appellee then employed Arthur Lewis, a colored carpenter, to make repairs. When Lewis ripped into the studs near the front door he found live termites.

Lewis began repairing the house in April 1960 and completed the work in January 1961.

Lewis testified that during the course of the repairs it was necessary to rip off the weather boarding and replace sills and studding around the entire outside of the house. Live termites were found in all of the damaged portions of the house. In general, the damage was from the ground sills to the height of the second story windows.

Lewis identified a sill and several pieces of wood as having been removed from the house during his repairs, and he stated he saw live termites in these pieces of wood at the time they were removed. These pieces of wood were introduced in evidence as exhibits by the appellee.

Lewis testified he did not have his records but that he had been paid in excess of $7,000 by appellee for the repairs and materials necessary thereto. In this connection, the appellee testified he had spent in excess of $9,000 on the repair work, and appellee's witness, Joseph S. Ford, a building contractor who stated he was familiar with the repairs on the house, gave as his opinion that $10,000 would be a reasonable sum for the repairs, and that the dwelling would be neither depreciated nor enhanced in value by virtue of such repairs.

W. A. Ruffin, who for 34 years had been Extension Entomologist for Auburn University, and at the time of trial was an employee of the Alabama Department of Agriculture, testified he had made an examination of appellee's home in July 1961. With the aid of an extension light he had examined the foundations, walls, and pillars beneath the house, as well as the outside of the house.

This witness testified he was familiar with the treatment techniques set forth by E. L. Bruce Company in its instructions issued to licensees of E. L. Bruce Company, the appellant being such a licensee.

Referring to various portions of these instructions, Mr. Ruffin stated that they called for trenches six inches wide and six inches deep to be excavated immediately adjacent to foundation walls, pillars, pipes, etc. A chemical known as "Terminix" was to be placed in the trenches at the rate of one gallon for each ten linear feet of trench. By soaking into the ground this chemical would form an apron or shield of sufficient depth to repel termites. This barrier, if properly created, would insulate a house from termites for a minimim of ten years. Termites live in colonies, sometimes many feet from a house, and tunnel underground and under foundations to get into a building. The "Terminix" shield keeps those termites on the outside from entering, and those already in the house die

if they cannot return to water and to the colony.

Mr. Ruffin testified he could not find any evidence of trenching under appellant's house.

Mr. Ruffin further testified that dirt filled porches or terraces call for a special treatment, and the only evidence he found of any treatment of the terraces adjoining appellant's house, was one or two holes drilled through the masonry under the house. This was not in conformity with the provisions of the E. L. Bruce Company instructions.

The witness also testified that the above mentioned instructions call for treating sills which are four inches thick or more, by drilling holes almost through the sills, not less than eight inches apart. Chemicals under pressure are shot into these holes.

Being shown a portion of a sill approximately five or six inches thick, removed from the appellant's house, the witness stated that a drill hole in it, by his measurement was only about one and a quarter inches deep, and this not in conformity with the instructions.

One experienced in examining for termites can, by hitting a sill, or other piece of wood with a hammer or other instrument, determine if the wood has been damaged.

Mr. Ruffin further testified that if live termites and damage are observed at the same time, the damage could not be old damage.

For the appellant William K. Fort testified that he had sold the original treatment contract to John B. Ames in 1948. At that time he had made an inspection of the premises and had reported to Mr. Ames that termite infestation was found as well as damage to the house across the front and rear.

This witness had charge of the original treatment of the house, and the work sheet and check list of the work done at the time was introduced.

Mr. Fort testified that trenches were dug against the foundations, pillars, etc., both inside and outside the house and Terminix applied. Mr. Fort also testified that some discretion is left to the man doing the reinspection work, and sometimes they are instructed to fill the trenches, and treat the fill.

The copy of the original contract reflects on the reverse side the dates of the reinspection findings and treatments on the house, as do separate reinspection reports introduced as exhibits. As before stated, these reports during 1953, 1955, 1956, 1957, 1959, and 1960, show either "O.K." or "No active termites."

Mr. Fort stated that the terraces were treated by boring holes at the mortar joints in the tile, some two or three feet apart, and forcing the chemical under pressure into the dirt under the terraces. According to Mr. Fort, these holes drilled at the mortar joints were later plugged with concrete mortar. In this connection it is to be noted that the Bruce Company instructions call for drill holes every twelve inches in treating dirt filled porches or terraces.

Mr. Isbell, an employee of appellant company, testified that he had reinspected appellee's house in 1953 and found no termite infestation. No evidence of trenching was observed in this 1953 examination. In 1960 he retreated the back near the garage and part of the dirt filled porch near the garage, and saw no live termites.

Upon being called to the house by Arthur Lewis, he and Mr. Hatcher, another employee, went there. They found the damaged area had been repaired, and they did not rip off any of the new repairs to look for termites. He asked Lewis to show him any damaged material but was told it had been hauled off.

Edward Palmiter, manager of the Selma Building Material Company, testified that in the summer of 1960 in response to a call he went to appellee's house. Some of the boards were torn off at the time and he observed live termites.

C. M. Thompson, an employee of appellant company, testified he had treated a new sill under appellant's house in October 1960, and had sprayed under the house. He saw no termites or termite damage at this time.

Frank H. Lyons, an employee of E. L. Bruce Company, and a qualified expert in the field of termite control, testified as to the techniques and methods of termite control, and especially as recommended by E. L. Bruce Company.

According to this witness, dirt filled porches, terraces, and bathrooms are the most troublesome areas in respect to termite infestation.

Mr. Lyons stated that "Terminix" would create an effective barrier against termites for a period of six months to twenty-five years.

■ Under the evidence adduced, these charges were properly refused.

Assignment of error No. 8 asserts as error the refusal of appellant's requested charge No. 9.

This charge reads:

"9. The Court charges the jury under the evidence in this case the defendant did not contract to become responsible for the repairs to the home of the plaintiff caused by termite infection."

■ This charge is misleading in that it is abstract under the pleading and the evidence. The complaint sought damages for breach of the contract to inspect and treat appellee's house in accordance with certain procedures as provided in the contract, and the evidence was directed toward establishing such averments. Nowhere in the pleadings or evidence was there any theory that the suit was upon a contract making appellant responsible for repairs.

Assignment of error No. 9 relates to the denial of appellant's motion for a new trial. Under this assignment counsel for appellant has directed his argument toward the proposition that the verdict is opposed to the great weight of the evidence.

■ The doctrines concerning our review of the rulings of lower courts on motions for new trials have been set forth in innumerable cases, and are now too well understood by the bar to again require a reiteration of the rules so well stated in the landmark case of Cobb v. Malone, 92 Ala. 630, 9 So. 738. Suffice to say that under these rules we would not be justified in casting error on the trial court because of its denial of the appellant's motion for a new trial.

Affirmed.

LAWSON, GOODWYN and MERRILL, JJ., concur.