This is an appeal from a declaratory judgment which held that the policy of insurance issued by appellant Cherokee Insurance Company (hereinafter referred to as Cherokee) to appellees Frank R. Warren and Joanne C. Warren, d/b/a Warren Properties, did provide coverage with regard to the allegations contained in a separate pending lawsuit
On May 6, 1977, Cherokee issued a special multi-peril policy of insurance to Frank R. Warren and Joanne C. Warren covering the large 200-unit family apartment complex known as Warren Village, which is owned by the Warrens and is located off Airport Boulevard in Mobile, Alabama. In pertinent part, coverage under the policy was conditioned upon compliance with the following standard provision:
 D. INSURED'S DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT:
 1. In the event of an occurrence, a written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances *Page 882 
thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the Company or any other authorized agent as soon as practicable
 2. If claim is made or suit is brought against the insured the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative
The policy further provided:
 G. ACTION AGAINST COMPANY: No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy. . .
On May 13, 1978, a severe downpour in the Mobile area caused flooding and water damage to the Fraziers' property, which was coterminous with Warren Village. Shortly thereafter, on May 16, 1978, the Fraziers, through their attorney, wrote to Warren Properties, in care of the Warren Village Apartments, and advised that "substantial damage was done to the Frazier's property caused by water coming from your property" during the recent heavy downpour. The letter further encouraged the Warrens "to take appropriate action immediately to see that the problem does not re-occur" and requested the Warrens to advise the Fraziers as to their "plans to pay the Fraziers for the damage done their property."
There was testimony showing that the Warrens advised Cherokee of the floods and certain claims for property damage made by the Warrens' tenants. Cherokee sent an adjuster to the property to investigate. The adjuster was given information as to the cause of the damage and the fact that it related to the overflow of surface waters and the drainage problems. However, Cherokee was not notified of the Fraziers' letter during this period
On August 13, 1978, there was another severe downpour which caused additional damage to the Frazier property as a result of an allegedly inadequate drainage system serving the Warrens' property. Once again, on August 14, 1978, the attorney for the Fraziers wrote Mr. Colbourne, general manager of Warren Properties, advising of the incident and referring to his earlier letter of May 16. After a criticism of Warren's drainage system, the August 14 letter requested Colbourne to "respond immediately as to steps which your company intends to take to correct this situation." The letter ended with the following demand: "Failing to hear from you within the next ten days, we have been instructed to proceed with all available legal remedies in an effort to see that this situation does not continue and to seek damages for the recent problems."
There was another letter of December 15, 1978, referring to a meeting between Mr. Colbourne's brother and the Fraziers' attorney, and it also advised of additional damage to the Fraziers' driveway and concluded with the request "that this condition be remedied immediately at your expense and that you advise us of appropriate steps taken to correct the problem in general."
The evidence showed that during this entire period of time there had been numerous conversations between Colbourne and the Fraziers' attorney. In early 1979, the Warrens engaged a local attorney to negotiate with the City of Mobile regarding the drainage problem. They also hired engineers to study the problem, and the results of that study were made available to any interested parties. The Warrens and other neighbors met with the city on a periodic basis, and while neither the Fraziers nor their attorney attended these meetings, the Warrens kept the Fraziers abreast of matters through contacts with the Fraziers' attorney at least once a month. Mr Colbourne testified in effect that Cherokee had not been notified because he had considered his conversation with the Fraziers' attorney as involving an overall solution to the drainage problem rather than a claim for damages
On June 6, 1979, the Fraziers filed suit in the circuit court of Mobile County seeking compensatory damages for the injuries suffered by the Fraziers and their property as well as punitive damages and a temporary and permanent injunction against the *Page 883 
defendants therein restraining them from causing any additional damage to their property
The Warrens were served with the summons and complaint on June 14, 1979, and forwarded this process to their insurance agent by letter dated June 21, 1979. After reviewing the situation, Cherokee sent a reservation of rights letter to the Warrens, dated June 29, 1979, and shortly thereafter filed its complaint for declaratory judgment in the circuit court to determine the coverage question
The cause was tried without a jury, and the trial court in its decree noted:
 During the course of trial Cherokee also conceded that it had timely notice of the occurrence, the overflowing drainage system, and timely notice of the commencement of the lawsuit against Warren. More specifically, therefore, the only issue for decision by the Court was whether or not Cherokee can avoid policy coverage upon its contention that Warren failed to give proper notice of the claim ultimately embodied in the [Frazier] lawsuit
The court found that the policy was valid and that Cherokee was obligated to defend the lawsuit and was liable to pay any judgment that might be rendered against the Warrens
Cherokee's motions for reconsideration of judgment or, alternatively, for new trial were denied. This appeal followed We affirm
In its brief, Cherokee raised three issues which can be merged into a single question: Did the trial court err to reversal by its determination that the notice condition of the insurance policy was not breached by the Warrens? Cherokee asserts that it did. We cannot agree
First of all, it is long settled in this state that where conflicting evidence has been taken ore tenus, a presumption of correctness attends the trial court's conclusion on issues of fact, and this Court will not disturb the trial court's conclusions unless clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidenceCougar Mining Co. v. Mineral Land and Mining Consultants, Inc.,392 So.2d 1177 (Ala. 1981); Raidt v. Crane, 348 So.2d 358 (Ala 1977); Adams Supply Co. v. United States Fidelity and GuarantyCo., 269 Ala. 171, 176, 111 So.2d 906 (1959)
The policy in this case required "immediate" forwarding of any demand, notice, summons, or other process. In AllstateInsurance Co. v. Fogg, 293 Ala. 155, 300 So.2d 819 (1974), this Court held that a requirement in a policy for "immediate" notice means that notice must be given with reasonable dispatch and within reasonable time in view of all the facts and circumstances of a particular case. Therefore, the determinative question is not whether the actions of the Warrens were immediate, but rather whether the delay in the notice was reasonable under the circumstances
The two factors to be considered in the determination of reasonableness of delay are the length of the delay and the reasons for the delay. Southern Guaranty Insurance Co. vThomas, 334 So.2d 879 (Ala. 1976). Also, where conflicting inferences may reasonably be drawn from the evidence, the question of the reasonableness of a delay in giving notice is a question of fact for the factfinder. See, Southern GuarantyInsurance Co. v. Thomas, supra; Provident Life and AccidentInsurance Co. v. Heidelberg, 228 Ala. 682, 154 So. 809 (1934) Conflicting inferences concerning the reasonableness of a delay may sometimes be drawn where the insured offers evidence of mitigating circumstances. Southern Guaranty Insurance Co. vThomas, supra
After reviewing the record in this case, we cannot find that the trial court was clearly erroneous in its determination that it could not find "as a matter of law that a reasonable and prudent man would have acted any differently than did the Warrens *Page 884 
under the circumstances of this case." Therefore, the trial court is affirmed
AFFIRMED
TORBERT, C.J., and MADDOX, JONES, and BEATTY, JJ., concur