This appeal involves a contract action brought by Edward M. Thompson Agency, Inc., against Hugh V. Smith, to recover unpaid insurance premiums.
Smith promoted a large real estate development known as Rolling Hills. Smith asked the Thompson Agency to prepare a survey of the insurance needs of Rolling Hills and to write the necessary insurance. The Thompson Agency complied with Smith's request and issued a one-year "Commercial Package Policy." This coverage took effect on June 1, 1976, and was renewed for annual periods to June 1, 1981.
The initial policy (1976-1977) and the first two renewals (1977-1978 and 1978-1979) were issued while Smith individually owned the Rolling Hills business. Interestingly enough, however, each of these policies designated not only Smith and his wife Sybil as insureds, but also a corporate name, Rolling Hills Golf and Racquet Club, Inc.
It was only after the coverage was renewed for 1978-1979 that Smith's business was actually incorporated, as "Rolling Hills, Inc." Thereafter, at Smith's request, the Thompson Agency substituted the name of Rolling Hills, Inc., for Rolling Hills Golf and Racquet Club, Inc., as an insured on the policies for 1979-1980 and 1980-1981.
The Thompson Agency brought suit when a portion of the premiums on the 1979-1980 and 1980-1981 policies was not paid. The defendants in the action were the named insureds, Hugh Smith, Sybil Smith, and Rolling Hills, Inc. The trial court, sitting without a jury, found in favor of the Thompson Agency against Hugh Smith only. A judgment was entered in the amount of $13,513.36 and Smith appealed.
The issue presented is whether there is sufficient evidence to hold Smith personally liable for the premiums owed on the 1979-1980 and 1980-1981 policies. We answer yes and accordingly affirm.
It is uncontroverted that the Thompson Agency issued the initial policy with Smith personally assuming the responsibility of paying the premiums. In addition, the record offers sufficient credible evidence, consistent with the tenets of the ore tenus rule, *Page 860 
to support the trial court's conclusion that this initial arrangement continued unaltered throughout all the subsequent policy renewals.
 "[I]t is long settled in this state that where conflicting evidence has been taken ore tenus, a presumption of correctness attends the trial court's conclusion on issues of fact, and this Court will not disturb the trial court's conclusions unless clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence. [Citations omitted.]"
Cherokee Insurance Co. v. Frazier, 406 So.2d 881 (Ala. 1981).
There is evidence that during the three years of coverage prior to the actual incorporation of Smith's business, a course of dealing evolved between Smith and the Thompson Agency whereby Smith personally paid the premiums on policies which, pursuant to Smith's request, listed a corporate name as an insured.
Smith testified:
 "Q. Didn't you say a little while ago that you recognized your personal obligation to pay these premiums prior to 1979. . . .
 "A. Prior to 1979 before the Corporation was formed, I felt it was a personal debt, yes, sir.
 "Q. Well, you knew it was a personal debt, didn't you?
"A. Prior to that time, yes, sir.
 "Q. Yes, sir, you knew it. You knew from the very beginning that Ed Thompson sold this comprehensive commercial package policy to Hugh Smith individually on Hugh Smith's credit, didn't you?
"A. Prior to 1979, that's correct.
 "Q. All right, sir. And you knew that as of March, 1979, the named insureds on that policy of insurance [were] Rolling Hills Golf and Racquet Club, Inc., Hugh V. Smith and Sybil Smith, Individually; didn't you?
 "A. It is my understanding that the policy is supposed to be written to Rolling Hills, Inc.
 "Q. No, no, no. I am talking about the policy that was in effect down to June 1st, 1979. . . .
 "A. Up until March 15th of '79, that is correct, yes, sir."
Thompson testified:
 "Q. I show you herewith Plaintiff's Exhibit Four-A, a Commercial Package Policy Number CPP 38-11-16 showing the named insured as Rolling Hills Golf and Racquet Club, Inc. and Hugh Smith and Sybil M. Smith, Individually. Did Edward M. Thompson Agency write that insurance policy for Hugh Smith and Sybil Smith?
"A. Yes, sir.
 "Q. At that time, were you advised that there was no such corporation as Rolling Hills Golf and Racquet Club, Inc.?
 "A. No, sir. I was told to write it the way it is written.
"Q. And who told you to write it that way?
"A. Hugh Smith. . . .
"Q. When did you first deal with Rolling Hills?
 "A. Before it was opened. I dealt with Mr. Smith before it was opened.
 "Q. And you were told to name the corporation, Rolling Hills Golf and Racquet Club, Inc.; is that correct?
 "A. I was instructed to write — the way I was instructed to write the insurance? Is that the question?
"Q. Yes, sir.
 "A. I was instructed to write the insurance in the name of Rolling Hills Golf and Racquet Club, I-N-C. and Hugh V. Smith and Sybil M. Smith, Individually. . . ."
Course of dealing has long been recognized in this jurisdiction to resolve disputes between insurer and insured. Specifically, in Home Protection of North Alabama v. *Page 861 Avery, 85 Ala. 348, 5 So. 143 (1888), an insurance company was held bound by its prior course of dealing with a policyholder concerning the forfeiture of a policy for non-payment of premiums. This Court held:
 "[I]f an insurance company, by its habits of business, create in the mind of a policy-holder the belief that payment may be delayed until demanded, or otherwise waive the right to demand a forfeiture, this is binding on the company, notwithstanding the express letter of the policy may not have been conformed to. [Citations omitted.]"
As such, we see no reason why course of dealing cannot under certain circumstances be applied conversely so as to bind a policyholder.
In dealing with Smith for three consecutive years, the Thompson Agency had come to rely upon Smith's personal credit for premium payments despite the fact that a corporate name, Rolling Hills Golf and Racquet Club, Inc., appeared on the policies. As a result, when Rolling Hills, Inc., was formed it was incumbent upon Smith, in order to change the existing course of dealing and shift premium liability to the corporation, to do more than tell Thompson to change the previously listed corporate name.
Thompson testified:
 "Q. Mr. Thompson, who instructed you to change the name of the named insured from Rolling Hills Golf and Racquet Club, Inc. to Rolling Hills, Inc.?
"A. Hugh Smith.
 "Q. Did he, at that time, tell you that he had formed a thousand dollar corporation and that you were to look to it solely for your insurance premiums? . . .
 "A. No, sir. He did not instruct me in any way, except to change the name of the insured.
 "Q. Did he instruct you to leave the names of Hugh Smith and Sybil Smith, Individually, as insureds?
 "A. No, sir. He told me only to change the reference to the Rolling Hills. That was the only change I was instructed to make. That would leave Hugh and Sybil as insureds on this coverage. . . .
 "Q. At any time, did Mr. Hugh Smith request you to renew this insurance and look solely to Rolling Hills, Inc. for your money?
"A. No, sir. . . .
 "Q. Mr. Thompson, you have been in court when Mr. Smith testified?
"A. Yes, sir.
 "Q. Did he ever tell you that he had formed this Corporation and that from then on you would have to look to the Corporation for your money?
"A. He never mentioned it, no, sir.
 "Q. Did he ever tell you that the Corporation had been formed with only a thousand dollars paid-in capital?
 "A. The Corporation was never discussed with me in any form whatsoever.
 "Q. Did you receive a request that the name Rolling Hills Golf and Racquet Club, Inc. be changed to Rolling Hills, Inc.?
"A. Yes, sir, we did.
 "Q. Was that the extent of the information furnished you?
"A. That was the extent.
As this Court stated in Inter-Ocean Ins. Co. v. Banks,268 Ala. 25, 104 So.2d 836 (1958):
 "There is authority for the proposition that when the insurer's agent regularly calls upon the insured for payment of premiums, the insured is within his rights to act upon the custom thus established. He is not required to make such payments otherwise unless prior notice is given him of the intention to abandon the custom. [Citations omitted.]"
We find that the Thompson Agency was entitled to look to the individual credit of Hugh Smith until notified of Smith's *Page 862 
intention to abandon the established course of dealing. Smith's request that the corporate name be changed did not constitute sufficient notice because it was customary for the Thompson Agency to look to Smith personally for premium payments even though for the first three years the policies listed a non-existent corporation as a named insured.
Smith states in brief, "An affirmance of this case would bode ill for corporate and business officers across this State." This statement is based upon Smith's contention that as a corporate officer he should not be held personally responsible for premium payments incurred strictly on behalf of the corporation.
Citing Whitehead v. Davison Oil Co., Inc., 352 So.2d 1339
(Ala. 1977), as instructive, Smith asserts there is no statute, charter provision, or personal agreement by which personal liability can be assessed.
 "It is axiomatic that directors and officers of a corporation are merely agents of the corporation and as such are not personally liable for obligations incurred by the corporation in the usual course of business absent a statute, charter provision or personal agreement to the contrary. [Citations omitted.]"
Whitehead, supra.
Our holding here does nothing to alter this well established rule. Smith incurred the responsibility of paying premiums before Rolling Hills, Inc., or any other corporation, was ever formed. Because of the course of dealing which subsequently developed, Smith was never relieved of this personal obligation. Consequently, the personal liability now assessed to Smith arose apart from any statute, the provisions of the corporate charter, or personal agreement made by Smith on behalf of the corporation.
While we acknowledge Smith's personal liability, we do not agree with the trial court that Smith alone was liable. By accepting the coverage offered by the 1979-1980 and 1980-1981 policies, Rolling Hills, Inc., also become obligated to pay the premiums.
Smith, as president of Rolling Hills, Inc., caused the corporation to be placed on the policies as a named insured. Clearly the corporation received the benefit of coverage under the policies. A party who accepts the benefits of a contract cannot escape its burdens. Mobil Oil Corporation v. TennesseeValley Authority, 387 F. Supp. 498 (N.D.Ala. 1974).
Based upon the foregoing, the judgment of the circuit court is affirmed in part, reversed in part, and the case remanded.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
TORBERT, C.J., and FAULKNER, EMBRY and ADAMS, JJ., concur.