445 So.2d 876 (1983)
SANJAY, INC., a corporation
v.
DUNCAN CONSTRUCTION CO., INC., an Alabama corporation, et al.
82-707.
Supreme Court of Alabama.
December 9, 1983.
Rehearing Denied January 27, 1984.
Rodney A. Max and Douglas J. Centeno of Denaburg, Schoel, Meyerson, Ogle, Zarzaur & Max, Birmingham, for appellants.
J.A. Keller of Keller, Cochran & Pitts, Florence, for appellee Duncan Const. Co., Inc.
Donald H. Patterson of Patterson, Weathers & Jester, Florence, for appellee Sheffield Motel Enterprises, Inc.
MADDOX, Justice.
This is an appeal from a summary judgment in favor of the plaintiff. The issue in this case is whether a foreign corporation can recover damages upon a cause of action based on contract if the foreign corporation was not qualified to do business in Alabama at the time the contract was made, but qualified before the performance of the contract was complete. The trial court held the foreign corporation could not recover damages. We affirm.
*877 The trial court's findings are pertinent here:
"(a) Duncan Construction Co., Inc., as Contractor, and City of Sheffield, Alabama (defined for the purposes of such contract as Sheffield Motel Enterprises, Inc.), as Owner, made and entered into an agreement dated December 3, 1980, for the construction of a motel in Sheffield, Colbert County, Alabama.
"(b) Under the terms of the contract dated December 3, 1980, (referred to in (a) above), Duncan Construction Co., Inc. agreed to engage Sanjay, Inc. for project manager for the construction of a motel in Sheffield, Alabama (Holiday Inn) "the project."
"(c) Thereafter on January 16, 1981, Duncan Construction Co., Inc. made and entered into a contract with Sanjay, Inc. for the furnishing of certain work, labor and materials in and about the construction of said motel in Sheffield, Alabama. In such contract Duncan Construction Co., Inc. is described as `Contractor' and Sanjay, Inc. is described as `Subcontractor.'
"(d) All work and labor contemplated in both of said contracts mentioned above was for the construction of a motel in Sheffield, Alabama, i.e. such contracts were to be wholly performed within the State of Alabama.
"(e) At all times hereinabove mentioned, Sanjay, Inc. was a foreign corporation not qualified to do business in the State of Alabama. Sanjay, Inc. was a foreign corporation not qualified to do business in the State of Alabama at the time it commenced furnishing work, labor and materials in and about the construction of said motel in Sheffield, Alabama. Sanjay, Inc. did not qualify to do business in the State of Alabama until September 18, 1981, more than eight (8) months after it commenced furnishing work, labor and materials in and about the construction of such motel. [We would only add the contract continued to be performed until February of 1982, as shown by affidavits of the appellant.]
"The Court makes no findings of fact as to the following:
"(i) whether or not Sanjay, Inc. has any standing to sue under that contract dated December 3, 1980; and
"(ii) whether or not either of said contracts was executed within or without the State of Alabama;
for that it affirmatively appears that the subject matter of both contracts and the work contemplated thereunder were to be wholly performed within the State of Alabama and Sanjay, Inc. was a foreign corporation not qualified to do business in the State of Alabama on the date of the execution of said contracts and was not so qualified to do business in the State of Alabama when it commenced furnishing work, labor and materials in and about the construction of said motel in Sheffield, Alabama.
"Sanjay, Inc. has argued orally and in brief that the prefabricating of materials outside the State of Alabama for the sole purpose of ultimately being used in the construction of a motel in Alabama and the performance of accounting and engineering functions outside the State of Alabama necessitated by the performance of a contract to build a motel in the State of Alabama take this case outside the rule of law hereinafter set forth. The Court does not agree. If such were the case, the public policy of this state as expressed in our Constitution and statutes could be flaunted by virtually any foreign corporation in the construction business. The Court takes judicial notice that many component parts of any structure to be erected in the State of Alabama are often fabricated outside the State of Alabama and any foreign corporation doing construction business in the State of Alabama will perform accounting and engineering functions outside the state. If such prefabricating and performance of ministerial functions outside the State of Alabama had the effect argued by Sanjay, Inc., the public policy of this state would be frustrated and defeated.

*878 "Our appellate courts have consistently ruled that foreign corporations doing business in this state without lawful qualification cannot use our courts to enforce [their] contracts. Such interpretation applies whether the contract is void because made in this state under Section 10-2A-247 or whether made outside the state. Where the contract is to be performed in this state, as in the case sub judice, regardless of where entered into, and in the performance the non-resident corporation must engage in business in this state, although the contract is valid, the public policy of this state, as evidenced by the Constitution (Ala. Const., Art. XII, § 232), and statutes, compels the courts of this state to refuse their aid to such offending corporation in the enforcement of such contract or recovering benefits accruing thereunder. This Court need not consider whether or not any contract was void under § 10-2A-247 to reach the result herein set forth."
Sanjay, Inc., the appellant, filed a mechanic's lien in the probate court of Colbert County against Duncan Construction Company, the appellee, for $270,000. After this action was filed, Duncan filed a declaratory judgment action in the circuit court of Colbert County naming Sanjay, the City of Sheffield, and Sheffield Motel Enterprises, Inc. as defendants. Duncan sought to quash the mechanic's lien and to recover $130,000 allegedly paid by Duncan to Sanjay mistakenly, and sought a declaration that the contract between Duncan and Sanjay was unenforceable and void.
Sanjay answered, asserted a counterclaim seeking enforcement of the lien, filed a cross-claim against the City of Sheffield, and joined Aetna Insurance Co. (the mortgagee) and Sheffield Motel Enterprises, Inc. as third-party defendants. Duncan and Sanjay each filed motions for summary judgment. After a hearing on August 20, 1982, the trial court granted Duncan's motion and dismissed Sanjay's counterclaim as based upon a void and unenforceable contract. On January 18, 1983, the City of Sheffield filed a motion for summary judgment. The trial court entered a summary judgment in favor of all parties and against Sanjay on the original complaint on March 24, 1983. Sanjay appealed from the summary judgment in favor of Duncan.
In its brief here, as at the hearing below, Sanjay candidly concedes that it was not qualified to do business in Alabama before and at the time the contracts were made. Sanjay did not qualify to do business in Alabama until eight months after work began on the motel, but did qualify approximately five months before the dispute arose.
First, we point out the standard of review in summary judgment cases: there must not be a genuine issue as to any material fact and the moving party must be entitled to summary judgment as a matter of law. Trust Company Bank v. State of Alabama, 420 So.2d 10 (Ala.1982); Reed v. Ray, 409 So.2d 814 (Ala.1982); Isbell v. City of Huntsville, 295 Ala. 380, 330 So.2d 607 (1976); Ala.R.Civ.P. 56(c). This is the same standard which the trial court must apply. Long v. Banker's Life and Casualty Co., 294 Ala. 67, 311 So.2d 328 (1975).
Sanjay argues that issues of fact were in dispute. It claims that the situs of the making of the contract was in dispute and that there were some questions about the place of performance. Of course, material issues of fact must not be in dispute, Trust Company Bank, supra, but as the trial court correctly pointed out, it was not necessary to determine where the contract was executed, Boles v. Midland Guardian Co., 410 So.2d 82 (Ala.Civ.App.1982); Citizens National Bank v. Bucheit, 14 Ala. App. 511, 71 So. 82 (1916); see also Lee v. Great Northern Nekoosa Corp., 465 F.2d 1132 (5th Cir.1972); the only issue was the enforceability of the subcontract agreement. As the Bucheit court stated:
"Where the contract is to be performed in this state, although not entered into here, and in the performance the non-resident corporation must engage in business in this state, although the contract is valid, the policy of the *879 state, as evidenced by the Constitution and statutes, compels the courts of the state to refuse their aid to such offending corporation in the enforcement of such contract or recovering the benefits accruing thereunder."
Bucheit, supra, 14 Ala.App. at 514, 71 So. at 86 (1916).
The Bucheit court cited Alabama Western Railroad Company v. Talley-Bates Construction Co., 162 Ala. 396, 50 So. 341 (1909). In Talley-Bates, the Court opined:
"The statute requires that an instrument in writing shall be filed with the Secretary of State before engaging in or transacting any business in this state. Its purpose has been stated. That purpose is not to be accomplished by a filing at the pleasure of the corporation, or when it may be to its interest to appeal to the courts of this state. We may safely affirm that nothing short of a compliance before any business is engaged in or transacted in this state satisfies either the literal requirement of the statute and Constitution or their policy." (Emphasis added.)
Talley-Bates, supra, 162 Ala. at 408, 50 So. at 344 (1909).
A foreign corporation cannot enforce a contract which is to be performed in Alabama if the foreign corporation has failed to qualify to do business in Alabama on or before the date the contract is made. The acts of Sanjay constituted doing business in Alabama. Boles v. Midland Guardian Co., supra; Kentucky Galv. Co., Inc. v. Continental Gas Co., Inc., 335 So.2d 649 (1976); see Talley-Bates, supra, wherein the foreign corporation attempted to avoid the prohibition by claiming it was not performing the contract, but had hired subcontractors to build a railroad in Alabama.
Sanjay next argues that the conduct of the appellee, Duncan, brings this case within the equity exception within Code 1975, § 10-2A-247(a):
"All contracts or agreements made or entered into in this state by foreign corporations which have not obtained a certificate of authority to transact business in this state shall be held void at the action of such foreign corporation or any person claiming through or under such foreign corporation by virtue of said void contract or agreement; but nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity...."
This Court has previously spoken regarding this so-called equity exception of Code 1975, § 10-2A-247, in First Bank of Russell County v. Wells, 358 So.2d 435 (Ala. 1978), wherein Justice Shores, speaking for the Court, stated:
"As this Court said in Jones v. Americar, Inc., 283 Ala. 638, 643; 219 So.2d 893, 896 (1969): `We think that which is prohibited in the Alabama statutes are suits on contracts by unqualified corporations....' We would addand only such suits. This Court has consistently held that foreign, nonqualified corporations are not denied enforcement of property rights by our statute." (Emphasis added.)
First Bank of Russell County, supra, 358 So.2d at 437 (Ala.1978); see Calvert Iron Works, Inc. v. Algernon Blair, Inc., 284 Ala. 655, 227 So.2d 424 (1969).
This provision in the statute does not alter the law that an unqualified foreign corporation cannot recover on contract. As was said of the action in C.C. Products, Inc. v. Premier Industrial Corp., 290 Ala. 179, 275 So.2d 124 (1972), any way you slice it, the action in this suit was ex contractu.
Sanjay next argues that because it qualified to do business during the performance of the contract, it is entitled to recover on the contract. This argument is based upon language found in Day v. Ray E. Friedman and Co., 395 So.2d 54 (Ala.1981). The Day court relied upon Montgomery Traction Co. v. Montgomery Light and Water Power Co., 229 F. 672 (5th Cir.1916). In Day, supra, a commodities broker, not qualified to do business in Alabama at the time an employment contract was signed, brought suit against an employee on a *880 promissory note signed by its employee after the broker had qualified to do business. The trial court granted summary judgment in favor of the foreign corporation and the employee appealed. On original hearing, we affirmed, in part, reversed, in part, and remanded. An application for rehearing was granted. The issue we were concerned with in Day, supra, was whether there was a scintilla of evidence in favor of the non-movant which would make summary judgment improper. We held that summary judgment was not proper based on several grounds. We must admit that there is language in Day, supra, which would suggest that a foreign corporation which qualifies to do business in this state during the performance of a contract is entitled to recover on the contract, but Day should be carefully read in view of the particular facts of that case. The law of this state is that a foreign corporation which has not qualified to do business in Alabama at the time of the contract cannot use Alabama courts to enforce that contract. In Sea Scaping Const. Co., Inc. v. McAtee, 402 So.2d 919 (Ala.1981), this Court stated the rule as follows:
"The bar created by the Constitution and statutes has been upheld when the pleadings and evidence showed that the foreign corporation had failed to comply with this state's laws of qualification `before and at the date of the contract....' Cable Piano Co. v. Estes, 206 Ala. 95, 89 So. 372 (1921). This position has been affirmed repeatedly. See, e.g., Calvert Iron Works, Inc. v. Algernon Blair, Inc., 284 Ala. 655, 227 So.2d 424 (1969); Computaflor Company, Inc. v. N.L. Blaum Const. Co., 289 Ala. 65, 265 So.2d 850 (1972); Birmingham Terminal Associates, Inc. v. United Produce and Products Equipment Co., Inc., 289 Ala. 80, 265 So.2d 863 (1972); C & C Products, Inc. v. Premier Industrial Corp., 290 Ala. 179, 275 So.2d 124 (1973) (such a contract does not give rise to any implied legal duty). See also Foxco Ind., Ltd. v. Fabric World, Inc., 595 F.2d 976 (5th Cir.1979).
"... [The Alabama view is] that compliance must occur when the contract was made."
Sea Scaping Const. Co. v. McAtee, supra at 921.
In Day there were several reasons, not pointed out in the opinion, which authorized the foreign corporation to sue in Alabama courts. The contract sued upon was a promissory note executed by an employee of the foreign corporation, and the note was executed after the corporation had qualified to do business in Alabama. Some of the money Day owed the foreign corporation "consisted of debts Day incurred as a result of personal losses while trading in commodities...." 395 So.2d at 56. In view of the particular facts in Day, the result this Court there reached is sound, because in some instances a foreign corporation may use Alabama courts to enforce agreements for business performed in this state made by it at a time when it had not qualified to do business. Cf. Kentucky Galv. Co., Inc. v. Continental Gas Co., Inc., 335 So.2d 649 (Ala.1976), and Johnson v. M.P.L. Leasing Corp., 441 So.2d 904 (Ala.1983). The facts of Day more closely approximate those of the last cited cases.
Sanjay lastly argues the foreign corporation falls outside the bar because the contract involved interstate commerce, as was true in Kentucky Galv. Co., Inc., supra. The appellant, Sanjay, is correct when it states that where sufficient interstate commerce is involved, our Constitution and statutes cannot bar enforcement of contracts in Alabama courts by foreign corporations not qualified to do business in Alabama. Kentucky Galv. Co., Inc., supra; First Inv. Co. v. McLeod, 363 So.2d 774 (Ala.Civ.App.1978). The appellant is incorrect when it argues that it is not involved in sufficient intrastate commerce to bring it within the bar. See Computaflor Co. v. N.L. Blaum Const. Co., 289 Ala. 65, 265 So.2d 850 (1972); American Amusement Co. v. East Lake Chutes Co., 174 Ala. 526, 56 So. 961 (1911).
This case involves a contract for the performing of construction activities, the *881 building of a motel in Alabama. There is a difference between "contracts requiring only the furnishing of materials, and contracts requiring the seller to perform construction activities." Kentucky Galv. Co., Inc. v. Continental Gas Co., Inc., 335 So.2d at 651 (Ala.1976). (Emphasis added.) From the contract signed by the parties, along with the affidavits, it is obvious that more was involved in this contract than the mere "sale and delivery of materials" into Alabama. Kentucky Galv. Co., Inc., supra, 335 So.2d at 651.
Our Constitution and statutes have created a bar precluding enforcement of contracts made by foreign corporations that failed to qualify before and at the date of the contract, where the contract is to be performed in Alabama. Sea Scaping Const. Co., Inc. v. McAtee, 402 So.2d 919 (Ala.1981); Cable Piano v. Estes, 206 Ala. 95, 89 So.2d 372 (1921).
This Court, like its predecessors, recognizes the harshness of this rule; however, it is our duty to uphold the principles established by our Constitution and statutes. The judgment, therefore, must be affirmed.
AFFIRMED.
FAULKNER, JONES, SHORES, EMBRY and BEATTY, JJ., concur.
TORBERT, C.J., and ADAMS, J., dissent.
ALMON, J., not sitting.
TORBERT, Chief Justice (dissenting).
Alabama harshly deals with foreign corporations which fail to qualify to do business before entering into contracts here. Alabama is one of four states[1] which permit a party to elect to hold void a contract with a non-qualified foreign corporation. This is the case even where the contract has been fully performed by the non-qualified foreign corporation.[2]Calvert Iron Works, Inc. v. Algernon Blair, Inc., 284 Ala. 655, 227 So.2d 424 (1969). This statute creates both public policy and private rights. Where facts of a case do not conflict or interfere with, or defeat the public policy of our state, we should recognize that the private rights created by a statute are subject to equitable and legal doctrines which may bar their assertion. In this case, plaintiff has presented evidence that defendant should be equitably estopped from asserting Code 1975, § 10-2A-247(a), and § 232 of the Constitution. Since I find that the policy of the state is not impaired and in fact may be promoted by the application of estoppel, I respectfully dissent.
We have long recognized that a private party cannot waive, through equitable estoppel or other means, the public policy of the state. See American Amusement Co. v. East Lake Chutes Co., 174 Ala. 526, 56 So. 961 (1911). Where "no considerations of public policy or morals are involved," this Court has said that "[a] party may ... waive a rule of law, or statute, or even a constitutional provision." Alabama Terminix Co. v. Howell, 276 Ala. 59, 62, 158 So.2d 915, 918 (1963). Hence, a statutory right can potentially be deemed to consist of two elements: public policy and private rights. In a given situation where the public policy of a statute is met or not invoked, only private rights remain. As we held in Alabama Terminix, private rights standing alone are subject to equitable estoppel, a form of waiver.

I. Public Policy.
In analyzing the public policy behind a statute, we must look to the potential reasons for passage which involve the public interest. Section 10-2A-247 and § 232 were aimed at protecting the public in several respects. First, the statute was directed at ensuring that foreign corporations pay taxes and fees. Code 1975, § 10-2A-247(b). Second, the statute attempts to *882 make foreign corporations accountable in Alabama courts. A third possible justification is to insure that the foreign corporation is subject to some additional regulatory scheme.[3]
Each of these justifications for § 10-2A-247 is satisfied when a foreign corporation subsequently qualifies to do business. Obviously, in such a circumstance, the state can compel payment of back taxes and the foreign corporation is subject to Alabama courts. As for other regulation, the foreign corporation's past efforts are subject to regulatory review and sanction. To avoid the public policy lash of the qualification laws, the foreign corporation must prove that the subsequent qualification was not in anticipation of a specific legal action. Otherwise, the mutuality of remedy afforded by our public policy would be potentially impaired. See Sea Scaping Constr. Co., Inc. v. McAtee, 402 So.2d 919, 921 (Ala.1981). So long as the qualification occurs without the anticipation of litigation, our public policy is satisfied.
A final possible policy justification for the qualification laws is that the statute serves as a general deterrent to coerce foreign corporations to qualify before entering into contracts in Alabama. I question whether this argument can be given any weight. Only ignorant foreign corporations would disregard our qualification statutes when entering into in-state contracts; these corporations are obviously unaware of our public policy. Deterrence cannot operate unless the foreign corporation actually knows of Alabama policy. More importantly, disallowing assertion of equitable estoppel would deter beneficial conduct. Foreign corporations, subsequently realizing that they had contracted in violation of the qualification statute, would breach a contract rather than perform work and not be paid. In-state entities would be deprived of valuable bargains unless they would be willing to incur the loss of time and money for litigation. This "transaction cost" will, in reality, often leave our citizens without an effective remedy if we do not allow the foreign corporation to be paid for performing under a contract after subsequent qualification.[4] Hence, § 10-2A-247 and § 232 do not serve the public interest as an alleged deterrent.
Recognizing that our qualification laws are "penal in its nature and in derogation of common law," we construe them so as to exclude cases which do not clearly fall within it. Jones v. Americar, Inc., 283 Ala. 638, 643, 219 So.2d 893, 897 (1969). The public policy is satisfied by subsequent qualification not in anticipation of litigation.

II. Private Rights
The determination that subsequent qualification not in anticipation of litigation satisfies the public policy of the state does not by itself restrict the defense of § 10-2A-247 and § 232. Indeed, a party may assert the defense as a private right even though the policy behind the law is fulfilled. However, *883 because subsequent qualification removes any policy concerns, a private party can waive his rights. Hence, subsequent qualification allows the foreign corporation to sue on a contract when the other party is equitably estopped from asserting the defense.
In the present case, Sanjay offered evidence that defendants knew Sanjay was not qualified and offered assistance to Sanjay to make it "legal" to do the construction work in question. Sanjay allegedly relied on these representations in contracting and performing the construction work. If proven, such facts would constitute the basic elements of equitable estoppel. See Baker v. Hospital Corp. of Am., 432 So.2d 1281, 1285 (Ala.1983); Mazer v. Jackson Ins. Agency, 340 So.2d 770 (Ala.1976). Since we recognize equitable estoppel as a defense in this situation, summary judgment on this issue was inappropriate.
We have reached a similar conclusion in an earlier case. In Day v. Ray E. Friedman & Co., 395 So.2d 54 (Ala.1981), this Court held that a party may, by his conduct, waive the contract defense of § 10-2A-247. In Day, the plaintiff, Ray E. Friedman & Co., was an Illinois corporation properly licensed by federal authorities to conduct business as a commodities broker. Friedman, in connection with opening a branch office in Birmingham, entered into a written contract with Day, who was to act as Friedman's account executive in Birmingham. Friedman did not qualify to do business in Alabama until April 12, 1974, more than one month after signing the contract.
On September 30, 1974, Day and Friedman mutually agreed to sever their relationship. Before transferring his license to another brokerage house, Day was required under the rules of commodities exchanges to settle his debts with his former employer, Friedman. The employment contract provided that Day would guarantee to Friedman payment of account deficiencies incurred by Birmingham customers trading on margin. As a result of this guarantee, as well as personal losses allegedly incurred by Day, Day owed Friedman $8,745.34. To settle the debt, Day executed a promissory note for the amount of the indebtedness to Friedman.
Subsequently, Friedman filed suit to collect on the promissory note. Day's answer alleged, inter alia, that the note was void "because of a failure of consideration on the theory that the underlying contractual obligation was void in Alabama at the time when Friedman was a foreign corporation which was not licensed to do business in Alabama." 395 So.2d at 56. In an unanimous opinion on this issue, written by Justice Maddox, we found that Day's conduct after Friedman qualified to do business constituted a waiver of the § 10-2A-247 defense. In affirming the trial court's grant of summary judgment on this issue, we approved the language of the trial court's decision.
"Following Friedman's qualification to do business on April 12, 1974, Day continued as an employee of Friedman. When he terminated his employment with Friedman, Day executed a promissory note in the principal amount of $8,745.34, recognizing his obligation to Friedman with respect to his own and his customer's debit balances. From the undisputed evidence in this case, the Court concludes that after Friedman had qualified to do business in Alabama, Day by his conduct recognized and adopted the employment agreement entered into by him with Friedman. It is then no defense to Friedman's claim under the note that Friedman had failed to qualify to do business in Alabama at the time the employment agreement was executed. While Day in his supplementary affidavit denies that any part of the balance due under the note represents his own debit account balance, he does not deny that the same represents debit balances of customers procured by him for which he is liable to Friedman under the terms of the employment agreement. There is then ample consideration for the execution of the note...."
*884 395 So.2d at 56-57. Although the Day holding does not expressly refer to equitable estoppel, the behavior involved created waiver and reliance, the essential characteristics of estoppel.
Presumably, the Court was unconcerned with the public policy issue in Day; indeed, like those in the present case, the facts in Day do not appear to invoke the policy concerns underlying § 10-2A-247, since Friedman subsequently qualified not in anticipation of specific litigation and was subject to relevant regulation. I do not entirely dismiss public policy concerns in the present case, recognizing the necessity of formally addressing the issue. Only in this limited sense do I disapprove of Day's approach.
The majority opinion attempts to distinguish Day from this case on three grounds. First, the contract sued upon in Day was a promissory note entered into after the foreign corporation qualified to do business. The issue was whether the note was void because of a failure of consideration related to the underlying agreement entered into at a time when Friedman was not qualified. In other words, the note would have been void if the contract which gave rise to the debt was itself void under § 10-2A-247. Therefore, the issue of the voidability of a contract entered into by a non-qualified foreign corporation was squarely before us in Day. The majority's second ground for distinction is that some of the money owed by Day represented his personal losses while trading commodities. To the extent that Friedman was liable for the personal losses of Day, this liability was apparently the result of the underlying employment agreement. Therefore, the voidability of the contract, even as to Day's personal losses charged to Friedman's account, determined if there was any consideration for the note. The fact that Day owed money to Friedman for personal losses or debts arising from a guarantee can only flow from some contract relationship between the parties, fully subject to § 10-2A-247. Moreover, Day denied that he owned any money personally; summary judgment was only based upon the assumption that the account balance reflected money owed as a result of the contract guarantee. 395 So.2d at 56-57. Therefore, personal losses were not considered by the Court. The third distinction is an attempt to describe Friedman's activities as interstate commerce and thus not subject to state regulation. See Johnson v. M.P.L. Leasing Corp., 441 So.2d 904 (Ala.1983). Friedman's activities of setting up an Alabama office, hiring employees, and regularly selling commodity shares in Alabama clearly constitute intrastate involvement completely subject to state regulation.
Because the majority opinion fails to distinguish Day from this case, the reasoning in Day must apply here. Defendants' alleged conduct in this case, like Day's, constitutes a waiver of the defense under § 10-2A-247.
In the absence of a public policy behind enforcement of a statute in a given case, a private party's rights under the statute may be waived. In the present case, I find that Sanjay's subsequent qualification not in anticipation of litigation does not violate the public policy of Alabama. Because a party who accepts the benefits of a contract should not be allowed to escape the burdens, Smith v. Edward M. Thompson Agency, Inc., 430 So.2d 859, 862 (Ala.1983), I would reverse the summary judgment.
ADAMS, J., concurs.
NOTES
[1] Arkansas, Mississippi, and Vermont are the other three states. See Ark.Stat.Ann. § 64-1202 (1980 repl. vol.); Miss.Code Ann. § 79-3-247 (1972); Vt.Stat.Ann. tit. 11, § 2120 (1973).
[2] Alabama's law in this regard may be unique. For example, Arkansas allows suit on a contract when fully performed. Rose's Mobile Homes, Inc. v. Rex Fin. Corp., 383 F.Supp. 937 (D.Ark. 1974).
[3] In the construction industry, local regulation through building and occupancy permits does not involve the certification of authority required of foreign corporations under § 10-2A-247.
[4] For example, assume X and Y bid on an Alabama construction project for A. X bids $300,000 while Y bids $310,000. X, a foreign corporation, signs a contract with A while not qualified to do business. As X prepares to perform, he discovers his error. Rather than risk the loss of $250,000 (the hypothetical cost of performance), he breaches the agreement with A.

A can sue X for the benefit of his bargain, or $10,000. Of course, A cannot recover the costs of litigation which may exceed this amount. For a discussion of the "American rule" prohibiting fee shifting, see Rowe, "The Legal Theory of Attorney Fee Shifting: A Critical Overview," 1982 Duke L.J. 651. Moreover, A may have lost time, money due to inflation, and other costs of rebidding.
Although A might wish to endorse X's subsequent qualification, X knows that A can later disavow his action when expedient, and the courts will declare the contract void. X will wisely refuse to perform and reduce his loss accordingly. Hence, disallowing application of equitable estoppel will cause our citizens to be faced with a losing proposition.